# Bentley et al. v. Wright.

November 12, 1946.

Rehearing denied Jan. 31, 1947.

W. H. Lewis and Stephen Combs for appellants.

J. E. Sanders for appellee.

OPINION OF THE COURT BY JUDGE DAWSON—Reversing.

The appellant Bentley and the appellee Wright were opposing candidates for the office of police judge of the City of Neon, a city of the fifth class in Letcher County, at the election held November 6, 1945. Bentley ran on the independent ticket under the emblem of a picture of himself, and appellee designated himself as a candidate on the Scales of Justice ticket under the emblem of balanced scales.

The City of Neon comprises parts of county precincts numbers 31 and 54, so that voters living within these precincts, but outside the corporate limits of the city, had no right to participate in the election in contest. Following the election the Board of Election Commissioners certified that Bentley received 157 votes and Wright 149. The certificate of election was issued to Bentley and he qualified and assumed the office of police judge.

Within the 30 day period prescribed by Section 122.070, KRS, but more than 10 days after the election,

Wright filed this action setting up various grounds of contest and demanding a recount. A motion to strike, special demurrer, general demurrer, and without waiving these an answer and counter contest were filed by Bentley. A reply joined the issues. The lower court overruled both demurrers and the motion to strike, and after considering the evidence declared the election null and void. Bentley appeals.

It is urged that the court was in error in overruling the general demurrer and the motion to strike. The motion to strike is directed in part at that portion of the petition demanding a recount. We agree that this motion should have been sustained since Section 122.100 KRS requires that a request for a recount of the ballots must be filed within 10 days after the day of election, and that if such request for a recount is included in a petition in a contest proceeding under KRS 122.070, the petition must be filed within the 10 days. Since the contest petition was filed after the expiration of 10 days the demand for a recount was made too late and the contestant was not entitled to the recount. However, in view of the conclusion reached herein it is not necessary to comment further on this point.

In its findings of fact the circuit court found that certain votes were illegally cast but did not attempt to charge these illegal votes to either party. It was found that the testimony was of such doubtful weight, and so conflicting, it was impossible to determine which party received a majority of the legal votes, and for this reason the election was declared void.

After an examination of the evidence we do not agree with the trial court. We find that the contestant concedes that R. H. Welch, Mrs. R. H. Welch, and Atta Wise voted illegally for contestant. We find that the contestee conceded that Mary Quillen, Crit Quillen, and Willie Anderson voted illegally for the contestee. We also find that both agree that the challenged votes of Edna Johnson, Felix Pence, and Mrs. R. M. Pence should not be deducted from either. This leaves in contest twenty votes, thirteen of which will be considered separately and seven of which will be considered as a class.

1. W. F. Taylor. His testimony is so confusing that it is impossible to determine with accuracy whether

he voted for Bentley or Wright. He said that he voted for Wright but also was positive that he marked his ballot underneath Bentley's picture. This voter is a non resident and his vote was illegal, but, as will be seen, it is not necessary to decide who received his vote.

2. Rosa Tolliver. This voter was convicted of a felony and has not been restored to citizenship. She says she voted for Wright but is a niece of Bentley. We think her testimony justifies a finding that she voted for Wright.

3. Frank Potter is a nonresident and therefore his vote was illegal. He is a nephew of Bentley but testified that he voted for Wright. The evidence is sufficient to charge this vote to Wright.

4. Mat Morgan testified he was registered in Precinct No. 54 but voted in Precinct No. 31; that he did not vote in the city election and was not given a city ballot. While one of the election officers testified that this voter was given a city ballot and that it was voted by him, there is some confusion in the testimony as to whether Morgan is a man or woman, and the evidence as a whole is insufficient to charge this vote against either party.

5. Roy Venters admits that he lived outside the corporate limits of the city but voted in the city election. His testimony indicates that he campaigned to some extent for Bentley who was his former father-in-law. However, he states he had some slight difficulty with Bentley and that he voted for Wright. We think this vote should be charged to Wright.

6. and 7. Monroe Bentley and Delphia Elkins, son and daughter of Bentley, testify that they were nonresidents but voted in the city election. They declined to say for whom they voted. It is contended that it is reasonable to assume that they voted for their father, Bentley, but where the illegality of a vote is established the voter may be compelled to state how the illegal vote was cast. It was the duty of the contestant to have these witnesses certified to the court for the purpose of compelling them to answer the question as to how they voted if he desired to avail himself of their answers. His failure to do this compels us to eliminate these two votes from consideration.

8. Guyndolan Penn is admitted to be an illegal voter by the pleadings although the evidence is not entirely clear. She states that she voted for Wright but lived in a house owned by Bentley. It is clear that her illegal vote should be charged to Wright.

9. Will Jent. Pleadings admit this vote was illegal. There is some conflict in the testimony, but the parties are bound by their pleadings. The voter states he voted for Wright, and therefore this vote is charged against Wright.

10. Gerna Venters is a relative of Wright. His vote is attacked on the ground that his ballot was exposed. It appears that after the ballot was voted the voter folded it in such a way that it could not be placed in the ballot box. He refolded it in the presence of the election officers who testified that when he placed it on a desk to refold it, it came open and they saw he had voted for Wright. To invalidate a ballot on this ground the disclosure must be voluntary and intentional. The testimony here indicates that the exposure was involuntary and unintentional. The trial court correctly held this to be a legal ballot.

11. John Craft testified that he maintains a home outside the city limits of Neon and also an apartment in the city over the store which he operates. Apparently for several years he lived in the apartment during the winter and in the country in the summer. He allowed his married son to take over the apartment, except for one room which Craft still maintains for use on nights he is required to stay in the city. The sole question is the location of Craft's legal residence. We agree with the trial court that the evidence is insufficient to support a finding that this voter's legal residence was outside the corporate limits of Neon.

12. Liza Collier says that when her husband became ill she went to live temporarily with her son in another town. Her husband remained in Neon with their daughter. She says she intends to return to her daughter's residence and that her daughter supports her; that she was only visiting her son, and regards Neon as her legal residence. This vote was legal.

13. Kate Seals did not testify but her vote was

challenged because of an exposed ballot. Two election officers testified that when she left the voting booth the ballot fell open and they saw how it was voted. It is clear from the evidence that this exposure was due to carelessness and was involuntary. The vote can not be voided on such evidence.

14 to 20. Colene Ferguson, T. N. Ferguson, Henry E. Bentley, Lucille Bentley, Jane Bentley, Dallas Settle, and Delcie Bentley are all nonresidents and are all closely related, either by blood or marriage, to Bentley. None of them testified. One witness stated that all voted in the city election, but there is no testimony as to how they voted. Thus the evidence falls short of the proof required to authorize the court to charge their votes against one of the candidates.

In considering the evidence in this contest proceeding we started with a majority of eight for the appellant Bentley. From the foregoing it will be seen that we have determined that five of the votes in contest should be deducted from the number received by Wright. This makes a majority of thirteen votes in favor of Bentley since the evidence authorizes no deductions from his total.

In the case of Marilla v. Ratterman, 209 Ky. 409, 273 S. W. 69, this court established the rule that where there has been fraud, such as intimidation, bribery and illegalities in an election, and the results of such fraud or illegalities can be eliminated so as to clearly ascertain the result effected by the legal votes, it is the duty of the court to sustain an election; but, if the court can not with reasonable certainty determine who has received a majority of the legal votes cast, the election should be set aside.

There is no evidence in this record showing any fraud, intimidation, bribery, or coercion. It does show that some nonresidents voted; that an unpardoned felon was allowed a ballot, and that some ballots were exposed. All these illegalities were specifically charged in the contest petition and proof introduced thereon. It was the duty of the trial court to eliminate irregularities and illegal votes and ascertain the result from a tabulation of the legal votes. For some reason the court below failed to do this. The evidence is amply sufficient to

determine the legality of the challenged votes and in most instances to determine for whom they were cast. The evidence in this case falls far short of establishing the impossibility of determining which candidate received a majority of the legal votes. In such a situation it becomes our duty to examine the pleadings and evidence in an effort to determine the wishes of the majority of the legal voters after eliminating those votes which the evidence shows to be invalid.. This we have done with the result that we find Bentley to have a majority of thirteen over Wright. Therefore Bentley was duly elected to the office of police judge of the City of Neon.

The judgment appealed from is reversed, with directions to set it aside and enter a judgment in conformity herewith.