## Hendrickson et al. v. Coign.

### Same v. Jarvis.

March 28, 1947.

J. J. Tye, Special Judge.

384

W. L. Hammond, Grant F. Knuckles, and Cleon K. Calvert for appellants.

E. B. Wilson for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

The Lone Jack Independent School District embraces portions of Four Mile Precinct No. 5 and Lone Jack Precinct No. 6 in Bell County, but does not include all of either. Elections for membership to the Board of Education of the District are held at the regular voting places in both precincts; and an election to fill three vacancies on the Board was held on November 6, 1946. On the face of the returns, George L. Hendrickson, and appellants, George B. Hendrickson and Robert Hibbard, received pluralities over appellees, Robert Coign and Andy Jarvis. The returns, as certified by the Board of Election Commissioners, are as follows:

| Name of Candidate | Votes Rec'd in Four Mile Precinct No. 5 | Votes Rec'd in Lone Jack Precinct No. 6 | Total Votes Rec'd |
|---|---|---|---|
| George L. Hendrickson | 120 | 152 | 272 |
| George B. Hendrickson | 169 | 89 | 258 |
| Robert Hibbard | 174 | 54 | 228 |
| Robert Coign | 17 | 180 | 197 |
| Andy Jarvis | 14 | 173 | 187 |

Thereupon, a separate contest was filed by each appellee against both appellants. In each of the cases appellants denied the allegations of the contest and set up grounds for counter-contest, and in each instance attempted by way of cross-petition to contest the election of George L. Hendrickson. The Chancellor struck the cross-petition from each suit. The cases were consolidated and, in a decision on the merits, the Chancellor sustained the contention of the contestants. Appeals have been filed in this Court from this judgment and from the order dismissing the contest against George L. Hendrickson. Separate motions of George L. Hendrickson, Coign, and Jarvis to dismiss the appeals were passed for consideration upon final submission of the case, and will be disposed of at this time. The motions of Coign and Jarvis now are overruled. The motion of George L. Hendrickson is sustained because he was not named obligee in the appeal bond. KRS 122.090. Philips v. Robinson, 225 Ky. 682, 9 S. W. 2d 995. We will now consider the appeal against Coign and Jarvis on its merits.

At the same election, the voters were called upon to fill a vacancy in the United States Senate. In Four Mile Precinct No. 5, 101 votes were cast in the Senatorial race and 191 votes were cast in the School Board race. The first sixty persons whose names appear on the stub book of the School Board race likewise appear in the same order on the stub book of the Senatorial race; but thereafter, 90 names appear on the stub book of the School Board race which were neither inscribed on the stub book of, nor voted in, the Senatorial race. With few exceptions, these names appear in blocks of uninterrupted succession, most notable of which are ballots 61 to 78, inclusive; 114 to 134, inclusive; 141 to 157, inclusive; and 172 to 189, inclusive, except ballot No. 184. The names in each of the groups appear substan-

tially in alphabetical order on the stub book. To illustrate: Commencing with ballot 114 and ending with ballot 134, the names are in the following order: Gray, Drew, Gray, Gambrell, Gray, Huter, Lovell, Lingar, Lovins, King, Holden, Holden, Hubbard, Hubbard, Jones, Jones, Lingar, Lumpkins, Miracle, Messer, and Miracle. The fact that nearly all of the names of the persons purportedly voting in the School Board race, and who did not vote in the Senatorial race, appear in their respective groups in substantial alphabetical order is a circumstance strongly persuasive of the contention that the names recorded on the stub book were copied from the alphabetical list of voters furnished the election officers by the County Court Clerk. Direct testimony of several witnesses was introduced showing the ballots cast in the names of those appearing on the School Board race stub book and not appearing on the Senatorial race stub book were not cast by the persons named, either because such persons previously or subsequently voted in person, had died, or for some other reason were absent from the precinct. The direct evidence in this respect is corroborated by the returns of previous elections in the same precinct. In the United States Senate race in 1942 a total of 41 votes were cast in the precinct; in the Governor's race in 1943 a total of 108 votes; and in the Circuit Judge's race in 1945, 90 total votes were cast. These previous returns are significant, in view of the fact that 101 votes were cast in the Senatorial race in 1946, whereas 191 votes, almost double any previous recent record, were cast in the School Board race. In fact, the fraud perpetrated in this race in Four Mile Precinct, although denied by appellants in their answer, finally and frankly has been admitted by them in their brief; and they call upon us now, not to sustain the certificate of the Board of Election Commissioners in declaring them to have been elected, but to declare the election void, because, they contend, there was so much fraud that the number and destination of the legal votes can not be ascertained, and that neither contestant nor contestee can be adjudged to have been fairly elected. On the other hand, appellees urge affirmance upon the ground that the evidence clearly discloses, and thus amply supports the Chancellor's finding, that all of the

fraudulently cast ballots were voted by the precinct election officers in favor of both of the appellants.

The law applicable to the case has been well settled by this Court in many cases construing KRS 122.080 (4), formerly Carroll's Kentucky Statutes, sec. 1596a—12, which, in so far as pertinent, reads:

"If it appears from an inspection of the whole record that there has been such fraud, intimidation, bribery or violence in the conduct of the election that neither contestant nor contestee can be judged to have been fairly elected, the circuit court, or the Court of Appeals, on appeal, may adjudge that there has been no election. * * *"

In Marilla et al. v. Ratterman et al., etc., 209 Ky. 409, 273 S. W. 69, 74, the Court said:

"If it can reasonably be done, a court should uphold the validity of an election, and not set it aside for light and trivial causes, and where there has been fraud, intimidations, bribery, illegalities, and irregularities, and the results of such sinister influences can be eliminated, and the result clearly ascertained between the legal voters, it is the duty of the court to do so, and to sustain the election, but, if the fraud, intimidation, bribery, irregularities, and illegalities are such, that the court cannot with reasonable certainty determine who has received a majority of the legal votes, the election should be set aside, and a candidate cannot be declared a victor, unless he can be shown to have received a majority or plurality of the legal votes cast at the election. The foregoing doctrines are supported by the following authorities, viz.: (Citing 22 cases)."

The rule in the Marilla case is conceded by both parties to be applicable to the facts adduced by this record. Therefore, the sole remaining question for our determination is whether the evidence is sufficient to show for whom the illegal votes were cast. We think it is clearly so, which we will now demonstrate.

The integrity of the ballot boxes was maintained, and it is not contended that anyone other than the precinct election officers wrote names on the stub book. It follows, "as the night the day," that the admitted fraud was perpetrated by the precinct election officers them-

selves. They did not take the witness stand to deny a single fact appearing in the record. It was shown without contradiction that all of them, in violation of law, while officiating at the election, openly advocated the election of appellants. We quote from the testimony of one of the witnesses:

"Q. Who were the election officers? A. Oliver Hinkle, Bill Champlin, Irvin Wilson, and Bryant Keith.

"Q. Do you know who those election officers were supporting in that election? A. They were supposed to have been supporting Bob Hibbard and George B. Hendrickson.

"Q. How do you know that? A. They told me who to vote for.

"Q. When and where? A. In there when they was writing the ballots.

"Q. I wish you would begin and put into the record all they said and did when you went in there to vote. A. Well, they told me when they went to writing the ballots to vote for Bob and George Buck Hendrickson; I went on in to vote and Champ (Bill Champlin) went in there and told his brother to vote for Bob Hibbard and George Buck Hendrickson, and that is all that was said."

Another witness testified that in a conversation with Bryant Keith, one of the election officers, previous to the election, concerning the method to be used in conducting the election: "I told him he had better be careful voting people around, he was just popping off, he said that the Court wouldn't do anything with him, they were for him from the Squire to the Circuit Judge." These charges are so grave that it is inconceivable the election officers would permit them to remain in the record uncontradicted if they were not true. Since the election officers themselves, according to the uncontradicted testimony, were the only persons in position to cast the illegal ballots, and since they were committing other illegal acts in furtherance of the candidacy of appellants, it is inconceivable that they would have voted any ballot for a candidate other than those of their choice.

Finally, since the illegal voting followed a plain pattern, and undoubtedly was done by the same group of persons, it is patent that appellees, who received only 17 and 14 votes respectively, did not benefit from the fraud. It is true that there was no direct evidence as to how the illegal votes were cast, but this, as well as any other fact, may be shown by circumstantial evidence. Tunks v. Vincent, 106 Ky. 829, 51 S. W. 622, 21 Ky. Law Rep. 475; Hodges v. Murray, 240 Ky. 127, 41 S. W. 2d 923; and the circumstances indisputably point to the fact that the votes were cast for George B. Hendrickson and Robert Hibbard. We therefore conclude that the Chancellor properly reduced the number of legal votes received by Hendrickson in Four Mile Precinct from 169 to 79, and those received by Hibbard from 174 to 84.

As we embark upon a discussion of the evidence in respect to the votes cast in Lone Jack Precinct No. 6, after eliminating the illegal votes cast for Hendrickson and Hibbard in Four Mile Precinct No. 5, the vote stands: Coign 197, Jarvis 187, George B. Hendrickson 168, and Robert Hibbard 138. Appellant challenged 29 ballots cast in Lone Jack Precinct, and introduced the testimony of George B. Hendrickson to support their contention. It is admitted that 3 of the 29 were cast by illegal voters; 2 of them voted for Hendrickson and Hibbard, and 1 voted for Coign and Jarvis. The vote now stands, Coign 196, Jarvis 186, Hendrickson 166, and Hibbard 136, with 26 challenged votes to be considered. Our decision in respect to the 26 votes will not affect Coign or Hibbard. Should all 26 of the votes be charged against Coign, he would still be entitled to a certificate of election; and since Hibbard is trailing the next lowest candidate by 30 votes, it is impossible for him to succeed. But since Jarvis at this point leads Hendrickson by only 20 votes, it is necessary for us to consider the evidence in respect to the remaining 26 challenged ballots. There was an entire absence of fraud in the Lone Jack Precinct, but it is contended by counsel for Hendrickson that, since it was not shown for whom the 26 votes were cast, the election should be declared void for uncertainty. We deem it unnecessary to answer this contention, because we have come to the conclusion that the Chancellor was correct in sustaining appellants' contention in respect to 8 of the 26 votes, and in

rejecting it in respect to the remaining 18. He found that the last 18 ballots challenged were cast by persons living in the precinct, or so near to an indefinite precinct boundary as to be termed legal voters within the rule pronounced in Everman v. Thomas, 303 Ky. 156, 197 S. W. 2d 58. The voters who lived in such close proximity to the precinct border as to justify confusion in respect to the proper precinct in which to vote were shown to have paid taxes in the Lone Jack Independent School District, to have sent their children to that School, and to have voted in Lone Jack Precinct from their present residences for periods varying from three to twenty-six years. The Court would not be justified in disfranchising a voter who, because of an indefinite boundary, had reason to believe, and in good faith did believe, himself to be a resident of the precinct in which he registered and had voted without challenge for a number of years. We therefore conclude, as did the Chancellor, that, of the legal votes cast in the District, Coign and Jarvis received a plurality over George B. Hendrickson and Robert Hibbard, and are entitled to certificates of election.

The judgment is affirmed.