## Stabile v. Osborne.

February 18, 1949.

428

Lawrence S. Grauman and Leon J. Shaikun for appellant.

Harris W. Coleman, Thomas S. Dawson, Henry L. Brooks, and S. J. Stallings for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

An election was held last November to fill an unexpired term in the office of Coroner of Jefferson County. The tabulation of the voting machines gave Dr. Vincent Stabile, Democrat, a majority of 31 over Dr. Paul Osborne, Republican. The totals were 67,739 and 67,708, respectively. When the count of the ballots of absentee voters had been added, the result was a majority of 119 for Dr. Osborne, and the certificate of election was issued to him. Dr. Stabile challenges the legal right to count

any of these ballots. A demurrer to his petition as amended was sustained and his petition of contest dismissed.

The petition charges specifically the failure of the County Clerk and the Board of Election Commissioners to perform in the manner prescribed any of the duties imposed upon them by KRS 126.270(1, 3) relating to the handling and counting of absentee voters' ballots. On this appeal the argument is confined to the failure of both the County Clerk and a member of the Board of Election Commissioners to write their respective names on each ballot and of the Commissioners to detach the secondary stub from any of them before they were placed in the box. It is further charged that every ballot was exposed to the view of the officers and their clerical aids with the secondary stub attached, thereby revealing for whom every absentee had voted. The contestant prayed that all of these ballots be disregarded and that he be declared elected.

The original petition stated there were 529 absentee votes of which 189 had been added to the machine votes of the contestant and 340 to those of the contestee. After the expiration of the time for filing a contest or setting up new grounds, an amended petition was filed to conform to the proof. This stated the total absentee ballots to be 546 of which the contestant received 198 and the contestee 348. We need not decide the point raised by the contestee that it was error to file the amendment because it set up additional grounds of contest, since the result of the election would be the same whether the additional ballots be considered or not. Neither need we pass upon the point raised by the appellee that the petition was fatally defective because it omitted to name the voters whose ballots were challenged.

The statute covering absentee voting, KRS 126.-270(1), prescribes that preparatory to counting the ballots the county clerk shall remove each ballot from the inner envelope so as not to expose how it was voted and that "The clerk shall write his name on the back of the ballot and then hand it to one of the members of the board of election commissioners, who shall write his name on the back of the ballot, detach the secondary stub, and

then place the ballot in a regular ballot box which has been provided for the purpose.''

The petition charges, as we have said, that neither officer signed any ballot. The appellant relies upon the line of cases which holds that a ballot not signed by a judge of the election cannot be counted. The general election statute, KRS 118.280, prescribes that the clerk and a judge of the election shall each sign his name on the ballot at the place designated before handing it to the voter. But it further declares ''No ballot not so signed in the handwriting by one of the judges shall be counted by the canvassing board.'' The courts, of course, give effect to the mandatory provision. Campbell v. Little, 251 Ky. 812, 66 S.W.2d 67; Berndt v. Fitzpatrick, 300 Ky. 484, 189 S.W.2d 678. Since there is no such mandatory provision with respect to the signature of the clerk of the election, it has always been held that a ballot is not vitiated by the failure of the clerk to sign it. Courts are loath to disfranchise a voter who is wholly innocent of wrongdoing, particularly where the irregularity of an election officer is but the failure to comply with directory provisions of the statute or to follow formal steps prescribed to obtain what is of greater importance, namely, a fair election and an honest count. This has been the consistent ruling of the court. Hogg v. Caudill, 254 Ky. 409, 71 S.W.2d 1020. It is the policy of the law to prevent as far as possible the disfranchisement of electors who have cast their ballots in good faith. While the regulations and procedure prescribed in the absentee voting law should be followed by the officers, a substantial compliance is sufficient if the proper ends are reached. McArtor v. State, 196 Ind. 460, 148 N.E. 477; Talbott v. Thompson, 350 Ill. 86, 182 N.E. 784. The absentee voters statute does not declare any consequence of noncompliance with the provision as to the signing of the ballots by either of the officers except a criminal penalty. KRS 126.990. We conclude, therefore, that the failure of the officers to sign their respective names on the ballots did not invalidate them and that the petition setting forth that as a ground of contest was demurrable.

The question as to the exposure of the ballots is more serious. The secrecy of the ballot is of paramount importance. It is prescribed by Section 147 of the Constitu-

tion, which makes it the imperative duty of the legislature to enact enforcement laws. Under that requirement it was held in State Board of Election Commissioners v. Coleman, 235 Ky. 24, 29 S.W.2d 619, that a provision in a statute that a ballot should be counted although the voter had failed to detach the stub on which his name was written was unconstitutional. Since the original enactment in 1930 of what is now KRS 118.290 placing the responsibility on the voter to detach the secondary stub from his ballot in the presence of the officers of election and to deposit it in the box, we have held that his intentional omission to do so nullifies his ballot and that it should be rejected. Raymer v. Willis, 240 Ky. 634, 42 S.W.2d 918; Adams v. Letcher County, 299 Ky. 171, 184 S.W.2d 801. It is because he voluntarily disclosed how he voted. Widick v. Ralston, 303 Ky. 373, 197 S.W.2d 261, 198 S.W.2d 56. But where a voter involuntarily or unintentionally exposes his ballot, it may be counted. Muncy v. Duff, 194 Ky. 303, 239 S.W. 49; Bentley v. Wright, 303 Ky. 618, 197 S.W.2d 420. In the present case the voters were free from fault. The allegation is that the election officers disregarded the rules laid down in the statute for preserving the secrecy of the ballot. But the statute does not say that this dereliction of duty shall result in disfranchisement of innocent voters. Apparently the requirement as to signatures is only to identify or authenticate the ballots for future consideration. The statute does not suggest any legislative intent of placing the power in these election officers to destroy the voter's right of suffrage. It should be added that nowhere is there any suggestion that the omission on the part of these officers was with any wrongful intention.

The appellant relies upon Nall v. Tinsley, 107 Ky. 441, 54 S.W. 187, 21 Ky. Law Rep. 1167; Smith v. Jones, 221 Ky. 546, 299 S.W. 170, and upon the rulings in State Board of Election Commissioners v. Coleman, supra; also upon a part of Raymer v. Willis, supra, and Adams v. Letcher County, supra.

Nall v. Tinsley deals with a local option election. It was rendered not long after the Australian ballot system was inaugurated and discusses its purposes and objects. The purpose of secrecy is to permit an independent expression of the people, free from the evils of improper

influences and intimidation. It was held that the use of ballots not of the thickness prescribed by the statute, but so thin as to nullify effectually the demand of a secret ballot and the object of the constitutional and statutory law, required the election be set aside. The opinion drew an analogy to a supposed case where the county clerk had not furnished any kind of ballots and a viva voce election had been held. In short, the court held that there was no substantial compliance with the law and, therefore, a consequent failure to hold a lawful election. There was a vigorous dissent on the ground that the decision gave the officers the power to nullify an election and that there was, in fact, an expression by the people of their choice in the matter. It was ably argued that the secrecy of the ballot, though an essential element, is but a means to the end, and a violation by the officers of the election should be disregarded where the voters were free from fault and it was not expressly provided in the statute that their dereliction in duty should invalidate it.

Smith v. Jones, supra, involved a primary election. There was almost a complete disregard of the law pertaining to the holding of an election in a certain precinct, and the results were thrown out. This but followed the general rule that fraud or illegal practices will nullify an election in a certain precinct or as a whole where the free expression of the people cannot be ascertained.

Raymer v. Willis, supra, 240 Ky. 634, 42 S.W.2d 921, was the contest of a primary election. It involved a number of questions. One of the points decided was that, where a voter had failed to detach the secondary stub with his name upon it, the ballot should not be counted. That was the fault of the voter. A larger question was that concerning the fact that officers in several precincts had not complied with the provision of the statute that they proceed forthwith to deliver the ballot boxes and paraphernalia to the county clerk upon the closing of the polls. We observed that the officers were subject to prosecution and added: "But it is a general rule of election law that, if the statutes do not expressly declare that noncompliance with a specified procedure shall result in throwing out the precinct or other district, a noncompliance that does not affect the fairness and equality of the election or the ascertainment of the true

result will not vitiate the election. 9 R.C.L. 1091, 1092; Marilla v. Ratterman, 209 Ky. 409, 273 S.W. 69; Muncy v. Duff, 194 Ky. 303, 239 S.W. 49; Craig v. Spitzer, 140 Ky. 465, 131 S.W. 264, and cases cited. Cf. Stewart v. Wurts, 143 Ky. 39, 135 S.W. 434. To hold otherwise would be to subordinate the substance to the form, the end to the means. It is a transcendent rule that the right of suffrage will not be destroyed by irregularities or derelictions on the part of officers charged with the duty of conducting the election fairly and honestly, unless their misbehavior was such as to render impossible of judicial determination the will of the people as expressed at the polls." Pointing out that there was no indication of bad faith and that the internal evidences of the boxes revealed no tampering with the ballots, we held their contents should be counted. In the course of the opinion we pointed out the distinction where the conduct of election officers revealed a fraudulent scheme and a purpose to violate the law, in which event nullification of the election should be declared. These conclusions are in accord with the rulings of this court from an early date. Thus, in Bates v. Crumbaugh, 114 Ky. 447, 71 S.W. 75, 76, 24 Ky. Law Rep. 1205, it was written: "The principle should be borne in mind that, as to duties required of the voter himself and duties required of election officers, a different rule prevails, and that when officers of election, by neglect or fraud, fail to perform their duty in a matter over which the voter has no control, the inclination of the courts is always that the voter shall not suffer by reason of the negligence of the officers; and, while the provision may be regarded as mandatory with regard to the officer, and his failure may subject him to punishment, it shall not disfranchise the voter who is not guilty of the violation."

In Cole v. Nunnelley, 140 Ky. 138, 130 S.W. 972, 974, we construed the statute, now KRS 118.300(5), declaring that where a ballot was exposed by a voter to any person it should not be deposited in the box as contemplating a willful exposure and held that it did not refer to the exposure by one of the officers of the election. We here reaffirm what was said there: "The voter should not be disfranchised by the act of another in exposing his ballot, or in looking at the ballot when the voter did not intend it to be seen."

Making specific application of this rule, in Snowden v. Flanery, 159 Ky. 568, 167 S.W. 893, two ballots with the secondary stubs attached were counted. The opinion does not reveal how the condition came about. In Marilla v. Ratterman, 209 Ky. 409, 273 S.W. 69, following general statements as to irregularities of election officers and voters which do not affect the fairness or equality of an election as not vitiating an election or affecting the validity of a vote, the court stated the failure of a clerk of an election to remove the secondary stub from the ballot, or to write his name upon the ballot, or the failure of any officer to take the oath of office or make a return in proper form, does not render the election void.

It would be a dangerous thing and put a premium upon misconduct to declare that an election officer by his dereliction in performing a duty, such as preserving the secrecy of individual ballots, may disfranchise the electorate in part or in whole and perhaps swing an election from one candidate to another, as here, or from one group of candidates to another group. There is a difference where there was a deliberate destruction of the secret quality of an election during the course of holding it or other fraud or such gross misconduct that it cannot be said that the results reflect the free and unhampered will of the people. The winners in such an election cannot be permitted to enjoy the fruits of victory. Of such is Nall v. Tinsley, supra. Likewise where good-faith action of officials is of such consequence that it cannot be said there was a free and equal election. Of such is Lakes v. Estridge, 294 Ky. 655, 172 S.W.2d 454. Even in such class of cases, the irregularities will be eliminated if it can be determined with reasonable certainty who has received a plurality or majority of legal votes notwithstanding them, for nullification of an election is a serious matter and is to be avoided if possible. Marilla v. Ratterman, supra; Bentley v. Wright, 303 Ky. 618, 197 S.W.2d 420; Hendrickson v. Coign, 304 Ky. 383, 200 S.W.2d 905.

As we have said, there is no claim of fraudulent or willful wrongdoing on the part of these election officials. The case is to be determined in the light of that situation. There is no need to express any opinion as to what would be proper under other circumstances.

We conclude that the trial court properly held this ground of contest unsustainable also.

The judgment is affirmed.