Joe B. (Smokey Joe) JARBOE, Appellant,

v.

Henry SMITH, Appellee.

Court of Appeals of Kentucky.

Oct. 17, 1961.

J. D. Buckman, Jr., Frankfort, Frank E. Haddad, Jr., Louisville, for appellant.

Paul R. Huddleston, Bowling Green, for appellee.

STEWART, Judge.

Appellant, Joe B. (Smokey Joe) Jarboe, incumbent county judge of Marion County, was the successful candidate for re-election to that position in the May, 1961, Democratic primary election. Appellee, Henry Smith, the opposing candidate, filed this contest suit seeking to have himself declared the nominee, and the trial court entered judgment in his favor.

Appellant's principal argument on appeal is that the circuit court erred in adjudging all the absentee ballots void and in deducting them from the total votes received by the parties. Appellant won renomination by a total majority of 27 votes; of these his majority was three votes in the precincts and 24 of the absentee ballots counted. The trial court eliminated all absentee ballots from the tabulation and ruled 15 precinct votes cast for appellant were illegal for various reasons, thus giving appellee a majority of 12.

In an opinion handed down, the trial judge found the absentee ballots were opened and counted in substantial violation of the law and without regard for the contest-

ant's rights. Specifically the violations listed were:

1. The board of three county election commissioners, sometimes referred to herein as "the board" and at other times as "the election commissioners", accompanied by an employee of the county clerk, took the absentee ballot box to a small room inside the office of the circuit court clerk, locked the outer door so as to exclude all other persons therefrom and then proceeded to tabulate the ballots, thus failing to give appellee a reasonable opportunity to be present for the purpose of inspecting and counting these ballots. See KRS 118.380 and 119.230(1).

2. The county clerk, Paul Clark, did not attend and act as clerk of the board and was not represented by a lawful deputy.

3. All ballots had the signature of one of the commissioners but none was signed by the county clerk. See KRS 126.270(1).

4. After they were signed the ballots were not redeposited in a separate and regular box to be provided by the clerk and were not thoroughly shaken and redistributed before the tabulation, both of which duties are detailed in KRS 126.270(3).

KRS 118.370(3) states that the board shall meet at 6:00 p. m. on election day to count the ballots and perform certain other acts specified by this subsection. Their meeting place shall be the office of the county clerk or "some other room designated by the board." In Marion County the counting place had customarily been the county clerk's office. The selection of another location was made for the tabulation by arrangement between the county clerk, Paul Clark, and the circuit clerk, Jennings Crowdus, who was also one of the election commissioners, to relieve the congestion existing on the occasion in the county clerk's office. No public announcement of this change was made and neither contestant nor contestee was notified.

Just before 6:00 p. m., on the primary election day, the election commissioners, Jennings Crowdus, Roger Hourigan and Charles Wooley, accompanied by Elizabeth Luckett, a deputy designated by the county clerk to perform the duties required of his office, took the absentee ballot box to the circuit clerk's office and proceeded to inspect and count these votes. Shortly thereafter appellant, who was let in by the janitor, entered and walked back to where the ballots were being inspected and counted. Somewhat later appellee came to the circuit clerk's office, and his testimony is to the effect that it was only after considerable delay that he was allowed inside, because he found the door was locked and had difficulty in getting inside.

Appellee claims he knocked and shouted for 15 minutes before he was allowed to enter, but no one inside the room, according to their testimony, heard any such noise. The three election commissioners stated they did not know the door was locked, until they heard a knock from appellee who asked for and was allowed access to the room. Admittedly, there was much noise in the entire courthouse on this election night. Sam Cooper Hill, the county attorney, testified: "I don't think you could have heard a stick of dynamite go off in there." It was also brought out that the door locks by a thumb latch, not a key, and could be locked by merely closing it. The evidence creates no fair inference there was any intention to exclude appellee from the place of the vote count. By the time he entered the room, the ballots had been taken out of both envelopes, the secondary stubs had been detached and strung on a string in order of their removal and the tabulation of the absentee ballots was partially completed.

While such a change to the circuit clerk's office may have caused appellee to lose the opportunity to inspect any of the ballots, it must be remembered that Smith was told, *when he made inquiry,* where the absentee ballots were being counted. He was allowed inside the room within two minutes of knocking on the door, according to the county attorney and one other witness who were standing outside the door with him,

or within 15 minutes, according to appellee and another witness.

In the light of this evidence the trial court held, relying upon Pickard v. Jones, Ky., 243 S.W.2d 46, 49, that Smith "was deprived of the opportunity to challenge the qualifications of the absentee voters and to see that the envelopes containing the ballots were in due form and to have the ballots counted in the open."

Appellant maintains there was a substantial compliance with the statute under the facts presented. A case relied upon by him to uphold the validity of the vote count, where the principle of substantial compliance was applied and where an absentee vote tabulation was involved, is Stabile v. Osborne, 309 Ky. 427, 217 S.W.2d 980, 982. This excerpt is quoted therefrom:

> "It is the policy of the law to prevent as far as possible the disfranchisement of electors who have cast their ballots in good faith. While the regulations and procedure prescribed in the absentee voting law should be followed by the officers, a substantial compliance is sufficient if the proper ends are reached." (Citations omitted.)

It is clear to us that Pickard v. Jones, supra, cannot be accepted as controlling since the facts there differ so materially from those in the case under consideration. In that case the election commissioners took the absentee ballot box into a small room in the courthouse and fastened themselves in seclusion after every person, including the county clerk, was ordered from the room. Under such conditions they proceeded to tabulate the absentee ballots. There was also gross irregularity concerning the retention of a properly locked and securely maintained absentee ballot box in the county clerk's office prior to the election, which dereliction alone, this Court said, "clearly violated KRS 126.240." To sum up, the Pickard case held the absentee votes invalid because of "the departure by the officers from the clear mandates of the statutes * * *."

■ In the present case, no attack is made upon the integrity of the absentee ballot box; no evidence is before us which tends to show that the absentee ballots that were counted were not authentic; no one, as we view the record, was wilfully excluded or was thrown out of the circuit clerk's office after establishing his right to be present; and no contention is advanced or proof has been produced that the officials in charge of the count were guilty of fraud or deliberate wrongdoing.

In our opinion there was not such a noncompliance with KRS 118.380 and 119.230-(1) as to invalidate votes which, from every angle we have considered them, are otherwise valid.

■ The trial court determined that the county clerk was not lawfully represented during the vote count. Elizabeth Ann Luckett, an employee of the county clerk, was present in the circuit clerk's office, having been designated to perform the functions required by law of her employer. She was then 18 years old, was working as a sworn deputy, and her official bond was signed, executed and entered in the proper order book. In Talbott's Devisees v. Hooser, 12 Bush 408, the acts of a deputy county clerk under the age of 21 were held to be not invalid on that ground alone. See also 14 C.J.S. Clerks of Courts § 86, p. 1269, which says that the office or position of deputy county clerk "* * * may be held by one who is not a qualified voter, such as a minor * * *." This same section also states that the acts of a deputy county clerk who is under age may nevertheless be as "valid as those of a defacto officer if he is recognized by the public as a deputy." We conclude that qualifications of the 18-year-old deputy cannot be assailed in respect to the duties she carried out during the absentee ballot tabulation.

The next two grounds urged for reversal are interrelated, as they concern how the ballots were treated when they were taken out of the box preparatory to their being made ready for tabulation in accordance

with certain provisions of KRS 126.270. To ascertain whether the acts of the election commissioners at this juncture resulted in vitiating the ballots we must consider what transpired. There was only one box used in Marion County in connection with the handling of absentee ballots, namely, the one in the county clerk's office in which the ballots were deposited as they were sent in by absentees.

According to the testimony of Jennings Crowdus, the chairman of the board, and his testimony seems not to have been materially contradicted, each election commissioner took turns in taking a ballot from the box. Next the name in the upper left-hand corner of the envelope was called out and the envelope itself was checked to determine if the date stamped on it by the county clerk was placed there before the closing of the polls. Then the inner envelope was removed and examined to see if the affidavit was properly executed before a duly authorized officer. After the ballot was extracted from the inner envelope and the secondary stub was torn off and put on a string, each ballot was then signed by Charles Wooley, the Republican election commissioner. The clerk's signature was not written on any of the ballots. The ballots were next placed face down upon a table, so no one could see how they were cast before it was time for their tabulation, it was claimed, and the empty envelopes were put in a wastebasket or in the ballot box. At this point, the testimony of this witness is not clear about whether the ballots were redeposited in the same box and shaken thoroughly and afterwards counted or whether the ballots which had been stacked upon the table were picked up from there and counted and afterwards returned to the box.

■ The evidence in this case conclusively discloses that the county clerk's signature was omitted from the back of all the absentee ballots counted, and the trial judge reasoned that this failure to comply with a specific legal requirement had a voiding

effect on these ballots. However, in Hogg v. Caudill, 254 Ky. 409, 71 S.W.2d 1020, this Court pointed out that the signature requirement imposed upon the county clerk was not a mandatory provision. Hence this officer's dereliction in this respect did not invalidate any ballot just because his name was missing therefrom. See also Stabile v. Osborne, supra.

■ The trial court found that the ballots were not *cast*, since they were simply laid in an open box or upon the table and the secondary stubs were strung in the same sequence. According to 29 C.J.S. Elections § 210g, p. 306, some courts have decided that under statutes requiring the redeposit of absentee ballots in a ballot box, the absentee vote is not complete until the redeposit has been made. However, such statutory provisions have been held by other courts to be directory rather than mandatory, so that a "technical noncompliance" therewith will not render an absentee vote invalid. In Siedschlag v. May, 363 Ill. 538, 2 N.E.2d 836, the absentee ballots were placed on a table rather than in the ballot box, just prior to tabulation, and such ballots were held valid.

Through all the cases relating to absentee voting, the theme of *substantial compliance* with statutory regulations is omnipresent. The courts are reluctant to deprive a voter of his right of suffrage because of mere irregularities which do not affect the fairness and equality of an election. It is felt that a voter, through no fault on his own part, should not suffer the consequences of a minor failure on the part of election officials to follow the formal steps prescribed. In such cases, as in this one, the question of fraud or wilful tampering with the election machinery was not present.

We believe the irregularities that are complained of in connection with the tabulation of the absentee ballots in the case at bar come within the application of this principle of law taken from 18 Am.Jur., Elections, sec. 225, p. 331: " * * * It may, therefore, be stated as a general rule

that if ballots are cast by voters who are, at the time, qualified to cast them and who have done all on their part that the law requires of voters to make their voting effective, an erroneous or even unlawful handling of the ballots by the election officers charged with such responsibility will not be held to disfranchise such voters by throwing out their votes on account of erroneous procedure had solely by the election officers, provided the votes are legal votes in their inception and are still capable of being given proper effect as such.  * *"

Other questions are raised in this appeal that we deem it unnecessary to answer. Since our conclusions of law in this case are based upon facts about which there seems to be no essential dispute CR 52.01, which is relied upon by appellee as controlling, has no application.

As the trial court acted erroneously in eliminating the absentee ballots, which votes we hereby hold are valid, it follows that appellant has a majority of 12 votes, and this entitles him to be declared the nominee for the office of county judge of Marion County in the forthcoming general election in November, 1961.

Wherefore, the judgment is reversed with directions that another be entered sustaining the validity of the tabulation of the absentee ballots involved herein and with further directions that the election commissioners deliver unto appellant a certificate of nomination as the Democratic nominee for county judge of Marion County in the next general election.

MONTGOMERY, J., not sitting.

PALMORE, Judge (dissenting).

I cannot join in this opinion without stumbling over Pickard v. Jones, Ky.1951, 243 S.W.2d 46, in which the facts were somewhat more flagrant than the facts of this case but the stated principle was unmistakably the same.