Clay M. BISHOP, Appellant,

v.

Charles C. SMITH et al., etc., Appellees.

Court of Appeals of Kentucky.

Oct. 17, 1961

Logan E. Patterson, Pineville, Clay M. Bishop, Manchester, for appellant.

Lester H. Burns, Jr., Manchester, Burns, Miniard & Oliver, Lexington, Neville Smith, Charles C. Smith, Manchester, for appellees.

CLAY, Commissioner.

This is a primary election contest. Appellee .Smith was certified the winner of the Republican nomination for County Attorney of Clay County by a margin of 17 votes. The special trial judge. upheld Smith's nomination.

There were charges and countercharges that a number of votes cast, including many in the Sexton's Creek precinct, were illegal. In the votes counted for the Sexton's Creek precinct, Smith had a majority of 29 votes. Even though Bishop picked up a few additional votes in other precincts, Smith still must be declared the winner unless the 29 vote majority in this precinct cannot be counted for him. Consequently, the Sexton's Creek precinct votes are the controlling ones.

Apparently Bishop set out in this contest proceeding to show that a number of votes in the Sexton's Creek precinct were illegal and that such illegal votes were cast for Smith. This plan of attack seems to have failed because Bishop was unable to prove that the illegal votes were voted for Smith instead of for himself. As the case developed, and as it appears here, the contestant can be successful only if the entire vote of this precinct is disregarded. It is his contention that there was such intimidation and disorder during the voting and also such a large number of admittedly illegal votes, for which Smith was in some way responsible, that all of the votes in the precinct should be nullified.

It was shown that there were some illegal and improper acts committed by certain persons at the polls. However, the trial judge found that there was no substantial evidence this conduct was instigated by Smith. Though there was some proof that Smith himself made intimidating

remarks, the difficulty with contestant's position is that he failed to prove a single voter voted for Smith because of any improper or intimidating acts.

The most serious question arises with respect to 150 votes which were clearly illegal. They were all cast after the official closing time of the polls. The trial judge properly declared these votes illegal. Our most recent case on the subject is Boone v. Humphrey, Ky., 349 S.W.2d 822.

It appears that Smith, along with at least one other lawyer, advised the election officials that it was proper for persons at the polls to vote after the official closing time. It is contended by contestant that Smith's participation in this procedure thereby made him responsible for the illegal vote, and such misconduct tainted the entire election in this precinct. However, we cannot say that such a mistaken opinion concerning the law by a candidate (which opinion has been held by other reputable lawyers) constitutes misconduct or could have the far reaching effect claimed here by contestant.

The total vote in this precinct was 390. Of these, the 150 votes just mentioned (plus another 11) were illegal votes. However, we have always recognized that except under extreme circumstances the voter who has cast a legal vote should not be disfranchised by the acts of others which result in illegal voting. See Stabile v. Osborne, 309 Ky. 427, 217 S.W.2d 980, and Napier v. Noplis, Ky., 318 S.W.2d 875.

It has long been recognized that when a contestant attacks specific votes as being illegal, it is incumbent upon him to name the voters and prove they voted for his opponent. Hogg v. Caudill, 254 Ky. 409, 71 S.W.2d 1020; Napier v. Noplis, Ky., 318 S.W.2d 875. Though apparently the names of the 150 voters who were ineligible to vote after the polls closed were available and could have been obtained by the contestant, he failed to bring these voters into court to prove for whom they had voted. The contestant contends that the burden of proving how these votes were cast shifted to the contestee because he participated in their illegality, but we know of no authority or sound reason for such a principle.

In the alternative, appellant contends that because there were so many illegal votes (and other irregularities) we should disregard all the votes in the precinct under what has become known as the twenty-percent rule. In the cases of Gregory v. Stubblefield, Ky., 316 S.W.2d 689, and Napier v. Noplis, Ky., 318 S.W.2d 875, we pointed out certain misapprehensions concerning this rule and discussed its limitations. In those cases it was held that all of the votes in a voting unit will be disregarded only if (1) there are a sufficient number of illegal votes (which are directly attacked) to change the result of the election, and (2) it is impossible to determine for whom these votes were cast. In the present case condition (1) was fulfilled, but condition (2) was not. As observed by the trial judge, particularly in view of the closeness of the vote for the entire precinct, there is no basis for speculating otherwise than that each of the two candidates received an equal share of the illegal votes. Under those circumstances we would have no justification for disfranchising the legal voters.

The excellent opinion of the special trial judge shows that all of the issues were carefully considered by him, and in our opinion his findings of fact were substantially supported by the proof and his conclusions of law were eminently correct.

The judgment is affirmed.

BIRD, C. J., not sitting.