**Woodrow ARNETT, Appellant,**

v.

**Howard HENSLEY, Appellee.**

**Howard HENSLEY, Appellant,**

v.

**Woodrow ARNETT, Appellee.**

Court of Appeals of Kentucky.

March 8, 1968.

Joe Hobson, Joe P. Tackett, Prestonsburg, for Woodrow Arnett.

Scott Collins, Prestonsburg, for Howard Hensley.

DAVIS, Commissioner.

This is an election contest involving the race for county court clerk of Magoffin County held November 2, 1965. On the face of the returns as originally tabulated, Woodrow Arnett, the Democratic incumbent county clerk, received 2,150 of the votes cast at the polls, plus 217 votes cast by absentee voters for a total vote of 2,367. Howard Hensley, the Republican candidate, received 2,207 votes cast at the regular polling places and only 67 of the absentee ballots for a total of 2,274, making Arnett the apparent winner by 93 votes if both the poll votes and absentee ballots are computed. It is to be observed that Hensley was 57 votes ahead of Arnett insofar as the count of the poll votes is concerned. Hensley filed a recount suit which resulted in a judgment reflecting no change in the tabulations as originally reported. Thereupon, Hensley instituted this contest action at the conclusion of which the trial court ruled that none of the absentee ballots could be considered by reason of " * * * such gross irregularities in the conduct of the absentee voting as sufficient to render all of the absentee votes cast in that election void and none of such absentee ballots are counted or recognized in this judgment." Pursuant to that finding, the trial court declared that Hensley was the victor in the race. Both Arnett and Hensley have filed separate appeals from the judgment, and Arnett has filed a cross appeal in the appeal of Hensley. We shall dispose of all of these appeals in this opinion.

Arnett presents several questions which we think may be summarized as: (1) Did Hensley's complaint state a cause of action? (2) Is Hensley precluded from challenging the absentee ballots because of his failure to file a written challenge before the absentee ballot boxes were opened as prescribed by KRS 126.275? (3) Did Hensley make a judicial admission estopping him from questioning the legality of the absentee ballots? (4) Did Hensley violate the Corrupt Practices Act and thereby preclude his maintenance of this action? (5) Were all the absentee ballots invalid?

Hensley's appeal charges that the court erred in refusing his proffered amended complaint seeking recovery of the emoluments of the office.

Arnett contends that the complaint was insufficient and should have been dismissed upon his motion for various reasons which we shall discuss seriatim:

(a) The contention is made that it was fatal for Hensley to denominate himself as plaintiff and Arnett as defendant in the complaint, because KRS 122.070 directs that a contest suit is to be filed in the circuit court of the county " * * * where the contestee resides * * * " in this type situation. It is maintained by Arnett that the caption of the pleading should have designated the parties as contestant and contestee, rather than plaintiff and defendant. We perceive no basis for so enshrining form over substance and have no difficulty in holding that the contention is utterly meritless.

(b) Hensley's complaint did not specifically assert that Hensley received a majority of the legal votes cast, but it did allege that Hensley was duly elected and that all of the absentee ballots were illegal

because of substantial violations of the statutes pertaining to absentee voting. Our examination of the complaint convinces us that it states a cause of action in these respects.

█ (c) Arnett attacks the complaint because it does not name any voter whose ballot is alleged to have been illegally cast. Reliance is placed upon Hodges v. Hodges, Ky., 314 S.W.2d 208, but that case is clearly distinguishable from the one at bar. In Hodges, there was an allegation that certain persons had voted illegally because they had failed to sign the comparative signature book, were improperly registered, or otherwise disqualified from voting. There was no allegation in Hodges that all of the votes were illegal nor even an allegation that the claimed illegal votes were sufficient in number to affect the election results. In that state of case, it was held that the failure to name the claimed illegal voters was fatally defective. In Ragan v. Burnett, Ky., 305 S.W.2d 759, it was specifically held:

"However, it is not always necessary to name specific voters when an election is being contested. Thus the names of particular voters are not of significance in a suit claiming violation of the Corrupt Practices Act, KRS 123.010 et seq. Goad v. Jackson, 270 Ky. 92, 109 S.W.2d 17. Nor where the entire election is challenged. Taylor v. Neutzel, 220 Ky. 510, 295 S.W. 873; Herald v. Turner, 237 Ky. 827, 36 S.W.2d 623.

"We have in the proper case disregarded all of the votes in a precinct where more than 20 percent of the total vote therein was shown to be illegal. Smith v. Jones, 221 Ky. 546, 299 S.W. 170. Obviously the names of individual voters are unimportant when an entire unit of votes of a particular class is nullified. It is then immaterial how any person in that class cast his vote, and naming some or all of the voters would serve no purpose." Id. 305 S.W.2d 760.

Upon the authority of Ragan, we conclude that it was not necessary to name the alleged illegal absentee voters inasmuch as the entire vote cast by absentee ballots was challenged.

█ (d) Arnett next challenges the sufficiency of the complaint for its purported failure to specifically allege in what manner the statutes relating to absentee voting were violated. We need say only that the allegations of violations of the absentee voting laws are charged in general terms and specific terms—the specific terms including twenty-nine listed instances. We hold that the complaint was sufficiently specific.

(e) It is contended that the complaint is insufficient as respects its assertions that Arnett violated the Corrupt Practices Act, because it merely recites in general terms that Arnett violated KRS Chapter 123. Whether this was a sufficient allegation we need not say, as the trial court's judgment was not based upon any violation of the Corrupt Practices Act.

█ Arnett contends that Hensley may not be heard to challenge the legality of any absentee ballot by reason of his failure to comply with KRS 126.275 which provides:

"The challenge of an absent voter's ballot must be in writing and in the hands of the chairman of the board of election commissioners prior to the time the absent voter's ballot box is opened."

Admittedly, Hensley did not file a written challenge of any absent voter's ballot prior to the time the absent voter's ballot box was opened. We regard this as insignificant as respects the challenges made in this action. It seems plain that KRS 126.275 envisions challenges to individual absentee voters, not challenges to the legality of the entire balloting by absentee voters. To follow the reasoning urged by Arnett, in construing the statute, would lead to an absurd result. Kentucky Constitution, Section 6, directs that all elections shall be free

and equal. Many irregularities in absentee voting could be indeterminable until after the opening of the absent voter's ballot box. It is clear, we think, that the General Assembly did not intend KRS 126.275 to bar the type of challenges to absent voting as have been presented in this record.

■ It is contended that Hensley made a judicial admission as to the legality of the absentee ballots when he asserted in his recount suit that the integrity of the voting machines and the absentee ballots had been maintained. The difficulty with that position is that Hensley's allegation was nothing more than a statement that the ballots to be recounted were in the same condition as they had been in when counted originally. The allegation of integrity of the ballots did not embrace any admission of legality of the ballots.

■ It is charged that Hensley violated the Corrupt Practices Act and therefore is barred from maintaining this contest action. The trial court heard evidence touching the issue as to whether Hensley had violated the Corrupt Practices Act but made no specific finding of fact as to whether he had so violated it. Certainly it is implicit in the trial judge's finding in favor of Hensley's election that no violation of the Corrupt Practices Act was ascribed to Hensley. The testimony seeking to convict Hensley of fatal violation of KRS Chapter 123 was far short of requiring the fact finder to so convict Hensley. We conclude that Arnett has failed to demonstrate that Hensley has violated the Corrupt Practices Act.

■ The determinative question is whether the record supports the finding that there were such gross irregularities in the conduct of the absentee voting as to render void all of the absentee ballots. The record reflects that there were many failures to comply with the statutory procedures governing absentee voting. We shall not undertake to recite all of the particulars in which Hensley contends that the law has

been violated, but we shall enumerate some of the glaring defects which we consider cumulatively sufficient to sustain the trial court's finding that all of the absentee votes were void.

■ KRS 126.225 directs that the county board of election commissioners and the county clerk, together with interested candidates or their representatives, and representatives of the news media, beginning on the nineteenth day before an election, and during regular office hours, shall examine all applications for absent voter's ballots in order to determine the voter's right to make application, as well as the regularity of the form and method in which the application has been submitted. The same statute requires that the county clerk shall have the registration records available at such meetings and shall read aloud the name of each applicant so that the applicant's registration may be checked if a challenge is made. The board of election commissioners of Magoffin County, as well as the contestee Arnett, incumbent clerk, failed to observe the mandate of KRS 126.225. The casual meeting of the election commissioners "four or five days prior to the election" was not substantial compliance with the provisions of KRS 126.225. At that time substantially all of the absentee ballots had been mailed out. The county clerk did not call out the names of the applicants, nor is there any suggestion that candidates and representatives of the news media had any opportunity or invitation to attend, as prescribed by KRS 126.225.

■ KRS 126.255(1) directs the county clerk to post a list of the names of persons who have filed applications for an absent voter's ballot. The list is to be posted in a conspicuous place immediately following the deadline for filing applications. The record indicates that such a list was publicly available on the counter in the county clerk's office, and it appears that there was substantial compliance with the

statute in this respect. However, KRS 126.255(2) provides:

"Not less than ten days before the election the county board of election commissioners shall cause to be posted in a conspicuous place in the courthouse a list of the names of all those to whom absent voter's ballots have been mailed. The board shall then furnish a list of the same to any candidate or his authorized representative upon demand."

There is no contention that this provision of the statute was followed. The county clerk furnished a list to the precinct officers at the polling places reflecting the names of persons who had applied for absentee ballots, but this procedure did not satisfy the requirements of the just quoted statute.

Hensley complains that the board of election commissioners of Magoffin County failed to abide by KRS 116.050 in that no secretary was chosen by it, nor did it keep any record of its proceedings. It is admitted in the record that the board did not follow the requirements of the statute. We are not to be understood as holding that this dereliction, standing alone, would invalidate the absentee votes, but we call attention to it as reflective of the conditions surrounding the entire voting procedure.

KRS 126.240 requires the county clerk to provide himself with one or more legal ballot boxes before sending out any absent voter's ballots. The same section of the statute directs that the ballot boxes shall be locked in the presence of the board of election commissioners and one of the keys shall be delivered to each member of the commission. KRS 118.230 prescribes specifications for legal ballot boxes and directs that a ballot box shall be provided with three strong padlocks different in combination so that the keys of one lock will not unlock either of the other two locks. The provisions of this statute were not observed, inasmuch as one of the two ballot boxes provided was not provided until election day—long

after the ballots had been sent out-and it had only one lock. The other box which was provided before the ballots were sent out was not prepared by the county clerk but by two of the election commissioners. They unlocked the box with keys which they had had in their possession since Arnett had taken office nearly four years before. Only two locks were placed on the box, and there were two keys to each lock.

KRS 126.260 requires the county clerk to keep the absentee ballot boxes in a secure and substantial place with a sufficient guard over them in a careful manner. The first box prepared was maintained in the vault in the clerk's office. The indices for deeds and other recorded documents were also maintained in the vault, which was open for public use during office hours. No guard, as such, was provided for the box until after the polls had closed.

The absentee ballots were not counted until the day after the election, although KRS 126.270 would seem to indicate that the absentee ballots should be tabulated before canvassing the votes cast at the polls. The sheriff of Magoffin County was an ex officio member of the board of election commissioners; his mother was the Democratic member, and Frank Prater, the Republican. The sheriff's brother was a candidate for county judge on the Democratic ticket in the election here involved. In describing the procedure followed when the count of the absentee ballots began, the sheriff testified:

"Well, we met in this back room back here to count the absentee ballots, and there were two locks on one of the ballot boxes. One of the commissioners, Frank Prater, Republican commissioner, unlocked one of the locks, and I asked for the other key to the lock and my mother gave me, oh, three or four keys that were together, and neither of the keys would unlock the other lock. I never had a key at no time, and still don't have a key to the absentee ballot box. So, the keys she had wouldn't open the ballot box and I asked Mr. Prater if he had

another key and he told me he didn't, and I turned around and asked somebody around the count there to get a car tool, or something, that I could open the lock without a key, break it off, and about that time Mr. Prater pulled out another bunch of keys that unlocked the ballot box."

Just before the polls closed at 6 p. m. on November 2, a deputy county court clerk made a last check at the post office and picked up approximately seventy-five absentee ballots which had been received in the United States mail. It was found that the ballot box being used for absentee ballots was too full to accommodate the most recent batch. The deputy county court clerk then requested the commissioners to prepare another box. Thereupon, the Democratic and Republican commissioners obtained the second ballot box upon which only one lock was placed. When the votes were tabulated from the second box, the first seventy-five of the seventy-six were found to have been voted Democratic. Only the last ballot removed from that box was marked for the Republican candidates. The law of probabilities is strained by this circumstance.

It was shown that on October 9, 1965, Jack Culbertson notarized 166 applications for absentee ballots. This "land-office" activity was performed in the office of the sheriff of Magoffin County. A substantial number of the absentee ballots were mailed to the county court clerk in envelopes bearing the return address of the sheriff. Mr. Culbertson is a rural mail carrier whose immediate supervisor is Elmer Arnett, a brother of the appellant, Woodrow Arnett.

It is charged that much of the notary work was performed by persons ineligible to render the service because of the notary's being connected as deputy, employee, or relative of the candidate to be voted for at the election. KRS 126.230. Without undertaking to detail the numerous instances in which disqualified notaries served, it suffices to say that a substantial number of the absentee ballots bore notary work performed by individuals proscribed from rendering the service by KRS 126.230.

The evidence concerning the manner of tabulating the absentee ballots discloses that little effort was made to comply with the requirements of KRS 126.270. One manifest departure from the procedure outlined in KRS 126.270(1) was occasioned by the failure of the voters to write their names across the face of the outer envelopes as directed by KRS 126.230. The envelopes were not removed from the ballot box one at a time as directed by KRS 126.270(1), but were withdrawn in groups of ten to fifteen ballots at a time. When the outer envelope fails to bear the name of the voter, it is apparent that it is impossible to determine whether the envelope contains a ballot cast by an eligible voter. It appears that more than half the absent voters failed to write their names across the face of the outer envelope.

The provision of KRS 126.270(1), requiring the clerk to open the inner envelope after a determination of the regularity of the outer envelope and the affidavit on the inner envelope, was not observed. The sheriff opened the inner envelopes, removed the secondary stub from the ballot, and passed the ballot to Arnett, who signed on the back of the ballot. The ballots were handled in such a way as to substantially preserve the secrecy of the vote while the necessary clerical actions were taken.

■ There are other alleged irregularities of which Hensley complains, but we feel that enough has been said to demonstrate the general situation respecting the absentee balloting in the election under consideration. There are certain basic principles of which we are mindful as we proceed to measure the facts against the legal requirements. It has been written that the regulations and procedures prescribed for absentee voting should be followed by election officers, but a substantial compliance is sufficient if proper ends are

reached. Stabile v. Osborne, 309 Ky. 427, 217 S.W.2d 980; Jarboe v. Smith, Ky., 350 S.W.2d 490. The court is reluctant to disfranchise voters because of irregularities or derelictions on the part of election officials, but it will face its responsibility and approve such a result if the departures from legal requirements are so broad as to taint the election or so as to require rejection of the part affected. Pickard v. Jones, Ky., 243 S.W.2d 46, at page 49.

It is to be observed that Hensley received just over 50.6% of the 4,357 votes cast at the polls, whereas he received less than 24% of the 284 absentee ballots cast in the county clerk's race. This factor alone would not suffice to warrant rejection of all the absentee ballots, but it does arouse suspicion that all may not have been well. In the absence of some plausible explanation, it would be supposed that the general ratio of voting as between poll voters and absentee voters would be more nearly equal. Cf. Crowe v. Emmert, Ky., 305 S.W.2d 272, and Warren v. Rayburn, Ky., 267 S.W.2d 720. The county court clerk is in a particularly sensitive position as respects the proper handling of absentee bollots. When the incumbent clerk is a candidate for re-election, as was Arnett in the present case, he " * * * finds himself in an extremely high position of trust and responsibility." Crowe v. Emmert, Ky., 305 S.W.2d 272, at pages 273 and 274. The failure of the clerk to see to it that the ballot box provided for absentee ballots was adequately guarded and appropriately locked, coupled with the unusual handling of the second ballot box which was provided with only one lock, when considered along with the disparity of the voting ratio between the poll votes and the absentee ballots and the unlikely happenstance that seventy-five consecutive votes out of seventy-six would be marked one way, all combine to support the proposition that the absentee votes were administered in such a manner as to preclude their consideration in the election contest

before us. The matters we have just mentioned become even more persuasive when we recall that there was no canvassing of the applications beginning nineteen days before the election, as provided by KRS 126.-225(1), nor any posting of the list of names to whom absentee ballots had been sent, as required by KRS 126.255(2). Upon the authority of Warren v. Rayburn, Ky., 267 S.W.2d 720; Ragan v. Burnett, Ky., 305 S.W.2d 759; Kincer v. Holbrook, Ky., 307 S.W.2d 922; Crowe v. Emmert, Ky., 305 S.W.2d 272; and Hale v. Goble, Ky., 356 S.W.2d 33, we conclude that the trial court properly adjudged that there were such gross irregularities in the handling of the absentee ballots in the election held November 2, 1965, in the contest for county court clerk of Magoffin County, as to render void all absentee ballots cast in that contest.

Hensley undertook to file an amended complaint seeking a judgment against Arnett for the emoluments of the office of county court clerk. The trial court rejected the tendered amendment, and Hensley has appealed from that action of the trial court. Arnett maintains that Hensley is not entitled to such an appeal because the amended complaint was not made part of the record and for other procedural reasons. It is our view that the trial court properly declined to permit the amendment, as it had no place in a contest suit which is a statutory proceeding designed for prompt decision without encumbrance by other legal problems. In this case it is proper to point out that final briefs in this action were not presented in this court until January 23, 1968.

The judgment is affirmed in the appeal of Woodrow Arnett v. Howard Hensley and in the appeal of Howard Hensley v. Woodrow Arnett and on the cross appeal of Woodrow Arnett v. Howard Hensley.

All concur.