## Adams v. Letcher County et al.

Nov. 8, 1944.

172

John D. W. Collins and J. Erwin Sanders for appellant.

Stephen Combs, L. E. Harvie and H. C. Faulkner for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER
—Affirming.

On a recount of the ballots cast on the question of the adoption of prohibition in the 54 precincts of Letcher County, the side favoring adoption received 3,001 votes, and the side opposing received 2,952, resulting in a majority of 49 for the former. No appeal was prosecuted from the recount. Thereafter, within the statutory period of 30 days, appellant filed suit contesting the election, resulting in judgment that the forces favoring prohibition received 2,923 legal votes, and those opposed 2,891, a majority of 32 in favor of adoption. From that judgment the appeal has been prosecuted.

At the outset, we are called upon to determine the question of whether the court erred in overruling the plea in abatement filed by appellees. Should that question be decided in favor of appellees, the judgment must be affirmed without consideration of any other question. The plea was based upon the contention that no legal summons was ever issued. The sheriff of the county, ex officio, is chairman of the board of election commissioners. The other original defendants were his associate members of the board, and who held no other official position. A summons was issued, directed to the sheriff, and placed in his hands with instructions that it be served on his co-defendants. Another summons was issued, directed to the coroner, and delivered to the sheriff, who accepted service in writing for himself. The sheriff in person served the summons on one of the associate members of the board; one of his deputies served it on the other associate member. It is contended that the summonses issued were void, because the one directed to the sheriff could not be served by him upon his co-defendants, he being an interested party; and the one directed to the coroner, but delivered to the sheriff, was likewise void, because the acknowedgment of service was not made as provided by the Code. Reliance is had upon Section 667 of the Civil Code of Practice, which provides:

"Officers to whom process may be directed.

"1. Every process in an action or proceeding shall be directed to the sheriff of the county; or, if he be a party, or be interested, to the coroner; or, if he be interested, to the jailer; or, if all these officers be interested, to any constable. * *"

The purpose of that section is to safeguard against placing the summons in the hand of an interested party who might, by reason of his interest in the case, deliberately refuse to serve the summons, or fraudulently return the process against an antagonist. In Knott v. Jarboe, 58 Ky. 504, 1 Met. 504, it was held that where the sheriff was a plaintiff, summons executed by him was void. In that case, the interest of the sheriff as plaintiff in the action was antagonistic to the defendant upon whom process was served. But where the interest of the party serving the process is not antagonistic to the person upon whom process is served, and the summons is actually executed, the evil sought to be averted by this section of the Code cannot be brought about. In such state of case, we believe the summons and its execution should be held to be valid as to the associate members of the board. By accepting service of the summons in writing, the chairman of the board entered his appearance, as he could have done, had no summons been issued in the first instance. In James v. Ashland Finance Co., 235 Ky. 180, 30 S. W. 2d 897, it was held that a sheriff who served summons on himself as defendant, and returned the process over his official signature, was estopped to question the sufficiency of the service of the summons. In any event, neither the sheriff, as chairman, nor the other members of the board of election commissioners, as such, are interested in the outcome of an election contest suit, within the meaning of the Code, although they are necessary parties; and if process is actually executed on each of them in the manner it was in this case, the sheriff's interest in the action is not so antagonistic or personal as to render the service of the process void. We are of the opinion, therefore, that the court properly overruled the plea in abatement. We will now proceed to a consideration of the merits of the case.

The record is voluminous, and the very helpful briefs necessarily so. Were we to attempt to detail the evidence in respect to each and every vote challenged,

the opinion would necessarily extend to an unreasonable length, and would serve no useful purpose; we will, therefore, address our remarks to what we conceive to be the questions presented pertinent to the decision, and purposefully useful as guidance for the possible determination of like questions in the future. Upon a careful review of all the evidence in respect to each and every challenged vote, we have concluded that, of the valid votes cast at the election, the side favoring the adoption of prohibition received a majority of not less than 15 nor more than 21 over the side opposed thereto. In arriving at this conclusion, we reverse the findings of the chancellor on the evidence in respect to the ballots cast by the following named voters, to-wit: Tim Asher, Mrs. Tim Asher, Arthur Arnold, James Cardwell, Waymond Rines, Louis Evans, John Reed, Dallas Elkins, Rhoda Rose, John Botnich, Delphia Parks, Kline Corder, Tom Curry, Willie Craft, W. O. B. Wright, Mrs. George Fields, and Frances Morrow. We concur in the chancellor's findings in respect to the other individual votes challenged. We reverse the lower court's action in deducting from the side favoring prohibition the votes of Mr. and Mrs. Tim Asher, because appellant did not allow sufficient time for appellees to prepare for the taking of the depositions, and to travel to Hamilton, Ohio, where the depositions were taken, from Whitesburg, where the notice was served, a distance of 267 miles by the shortest route. The notice was served on Friday afternoon at 1 o'clock, to take the depositions on the following Monday between the hours of 10 A. M. and 2 P. M. Sections 565 and 567 of the Civil Code of Practice provide:

"Sec. 565. Taken upon notice or interrogatories.

"Depositions shall be taken upon reasonable notice to the adverse party or upon interrogatories."

"Sec. 567. Reasonable notice; what deemed. A notice shall be deemed reasonable that allows one day for each thirty miles which the party will have to travel and one day for preparation if the distance be less than one hundred miles, and two days if it be more. If the distance exceed fifty miles and the usual mode of travel for the whole or a part of the distance be by steamboat, railroad cars or other public conveyance, the time ordinarily required by such mode of travel, with the days given for preparation, shall be deemed sufficient in the

notice. If the distance be less than thirty miles, a notice which gives to the party a reasonable opportunity to be present shall be sufficient.''

The shortest time in which the trip can be made by public conveyance is admitted to be 15 hours; and, since the distance which must be traveled is in excess of 100 miles, appellees were allowed two days in which to prepare for the taking of the depositions, in addition to the time required to travel to the place of the taking. In Shropshire v. Dickinson, 9 Ky. 20, 21, 2 A. K. Marsh. 20, 21, it was held that a notice which requires an attorney to travel on Sunday is unreasonable. In Marcum v. Melton, 231 Ky. 244, 21 S. W. 2d 291, and cases therein cited, it was held that, if the time within which an act is to be done is more than a week, Sundays are to be included in the count; whereas, if it is less than a week, Sunday is to be excluded. Consonant with these decisions, we are of the opinion that, in construing the time allowed for preparation and travel between the notice and the taking of the depositions, an intervening Sunday must be excluded; we therefore hold that the time allowed appellees before the taking of the depositions of Mr. and Mrs. Tim Asher was insufficient to render the depositions admissible in evidence. Excluding these depositions, there is no evidence in support of the chancellor's decision that their votes were cast illegally for the side favoring prohibition. This conclusion adds two votes to the side favoring prohibition.

In reversing the chancellor's finding in respect to the other voters mentioned, we have concluded that the the evidence shows that the ballots cast by the following named persons should have been deducted from the side favoring prohibition, instead of the side opposed thereto as decreed by the chancellor: Arthur Arnold, James Cardwell, Waymond Rines, and Louis Evans. Our conclusion in respect to these voters subtracts four from the total vote favoring prohibition, and adds four to the total vote opposed thereto. We have concluded that the evidence is not sufficient to show Tom Curry, Willie Craft, and W. O. B. Wright to be nonresidents of their precincts, and their votes cast for the side opposed to prohibition should have been counted. This conclusion adds three votes to the total cast by the side opposed to prohibition. The votes of Mrs. George Fields and Frances Morrow, which were tallied for the side in favor of pro-

hibition, were illegally cast, and should not have been counted. This deducts two votes from the total cast for prohibition. The vote would then stand, those in favor of prohibition 2,919; those opposed 2,898; a majority of 21 for the proponents of prohibition. It is admitted that John Reed, Dallas Elkins, Rhoda Rose, John Botnich, Delphia Parks, and Kline Corder cast illegal votes. They testified they voted in favor of prohibition; but before giving their testimony executed written affidavits that they had voted for the side opposed to prohibition. There is no testimony other than the affidavits in support of the chancellor's decision that these voters cast their votes for the side opposed to prohibition; therefore, he was clearly wrong in deducting them from that side. It is unnecessary for us to determine whether these votes should have been deducted from the side favoring prohibition, because they would not change the decision in respect to the result of the election. In one event, the majority would be 21, and in the other 15, in favor of the side advocating prohibition, if the election can be declared to have been valid, which question we will next consider.

In Rocky Branch Precinct No. 39, the election officers, who previously had had no experience as such, issued ballots to the first 32 voters by detaching from the back of the book instead of the front, and leaving attached to the ballots both primary and secondary stubs. They directed the voters to detach the secondary stubs and place their ballots in the box with the primary stubs attached. The thirty-third voter to call for a ballot was Landis Bates, who refused to cast his vote with the primary stub attached. When he explained his reason, the election officers stopped the voting in the precinct, and sent for the chairman of the board of election commissioners, who was twenty miles away. In the meantime the first 32 voters reassembled at the polls and demanded the right to vote again. When the chairman of the board arrived, he correctly advised the election officers that the primary stubs should be left in the book, and the ballots issued with the secondary stubs attached, which in turn should be detached by the voters before placing the ballots in the box. He further advised them not to issue new ballots to the 32 voters who had cast their ballots with the primary stubs attached; asserting that the board of election commissioners would count those ballots as if they had been deposited in the manner

prescribed by statute. The board of election commissioners correctly refused to count the ballots to which were attached the primary stubs; and it is now contended that, since 29 of the 32 votes were cast for the side opposed to prohibition, and only three were cast for the side favoring prohibition, the election should be declared void, because the mistake of the precinct election officers effectually disfranchised voters for the wet side sufficient in number to have changed the result of the election. In support of this contention, appellant cites the following cases to-wit: Wallbrecht v. Ingram, 164 Ky. 463, 175 S. W. 1022, 1028; Lakes v. Estridge, 294 Ky. 655, 172 S. W. 2d 454, 455; Boles et al. v. Knight, 257 Ky. 640, 78 S. W. 2d 913; and Muncy v. Duff, 194 Ky. 303, 239 S. W. 49. Irrespective of the soundness of those decisions, appellant's argument overlooks the fact that, although they lost twenty-six (26) votes in Precinct No. 39, as a result of mistakes of the election officers, appellees lost forty-four (44) net votes in other precincts for the same reason. That being true, when all mistakes of the election officers are considered, as they must be, the result was not materially affected.

The judgment is affirmed.

Whole Court sitting.