## Sublett et al. v. Sublett et al.

January 17, 1950.

J. C. Carter, Jr., Judge.

24

■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■

Woodward, Hobson & Fulton for appellants.

Ralph Hurt, R. D. McAfee for appellees.

JUDGE HELM—Affirming.

John Green Sublett died at the home of appellants in Adair County on April 7, 1946, ten days before his eighty-second birthday. He had lived at the home of appellants from June 12, 1945, until his death. He was a bachelor, his nearest of kin being several nieces and nephews, one of whom was appellant Branch Sublett. He suffered a paralytic stroke on October 28, 1943. Since he was a bachelor and living alone in his own home at Cane Valley at the time and required attention, he employed a man to look after him. Later he terminated this arrangement and for about two of the three remaining years of his life lived in the homes of his kin for different periods of time. In each instance he paid board of from $5 to $15 per week.

On September 11, 1945, the decedent, John Green Sublett, gave appellant Branch Sublett a check in the amount of $5,000. On January 9, 1946, for a consideration of $500, "receipt of which was acknowledged," he conveyed to Branch Sublett his Cane Valley home. At the same time he executed a will devising, after a specific bequest of $500 to a favorite grandniece, Eloise Sherman, the remainder of his estate, approximately $12,500, equally among his nineteen nieces and nephews, including appellant Branch Sublett.

This action was instituted in November, 1946, by appellees, nieces and nephews of decedent, against appellants, David Jones, and the Marion National Bank, to set aside the above deed of conveyance and to recover the $5,000 gift to appellant Branch Sublett.

In July, 1947, appellees took proof, including cross-examination of each of the appellants. This was the only proof taken. By agreement of the parties, the case was submitted for opinion and judgment at the July, 1948, term. The trial court rendered judgment setting aside and cancelling the deed to appellant Branch Sublett, conveying to him the Cane Valley property, and adjudging a recovery of the $5,000 gift and of certain

personal property, and voiding an uncashed check for $90 purporting to have been given decedent as the purchase price of the Cane Valley property. The case was dismissed as to Jones and the bank. Appellants appeal from that judgment.

In their petition appellants' plead: "The plaintiffs further state and charge * * * that the defendants, Branch Sublett, Eulan Sublett, and Loneta Sublett, wrongfully and fraudulently conspired together to obtain and, in fact, did obtain for themselves, * * * a greater part of the estate of the said decedent, John Green Sublett, by wrongfully, unlawfully and fraudulently exercising upon said decedent undue persuasion, coercion and undue influence, and while said decedent did not have mentality sufficient to understand and appreciate the nature and effect of his acts, as aforesaid."

Appellants say: "The question presented for determination is whether there is sufficient evidence of mental incapacity and undue influence to sustain the judgment."

The testimony for appellees is that decedent was much changed as a result of the paralytic stroke suffered by him, and that thereafter he gradually grew weaker in both body and mind. B. N. Sublett, a nephew, visited the decedent at the home of Branch Sublett in August, 1945. He found him much changed "since his first paralytic stroke." He was frail and very weak, was confused as to his near relatives, and talked and acted like a child. At that time, appellant, Branch Sublett, talking with him about their uncle said: "His condition is getting much worse very rapidly. * * * He is not capable of transacting any business." He says his uncle, before he had the stroke, told him that he was going to give the Cane Valley home to his grandniece, Eloise Sherman. This property, he says, in January, 1946, was worth around $2,000.

Tennie B. Rice, a nephew, says decedent, after his stroke in October, 1943, was "tottery"; that after he quit living at his Cane Valley home he went to "my Aunt Susie Sublett's" and stayed there about a year and then came to the Rice home for over a year. While at his home he "was very weak in * * * mind and body. * * * We could not keep him off the highway. * * * We

were afraid he would get run over. He was just like a child. * * * After he went to Branch's * * * it seemed that his mind had gotten worse." He gave his wife— Mrs. Rice—$10 a week and had paid board at the other places where he stayed. Decedent had about $17,500 on deposit in various banks; he had a gold watch and chain, and a diamond ring. Rice was of the opinion that from the time he left his home until his death he did not have sufficient mentality to sell property, or to do business of any kind. Henry Robinson, an attorney of Campbellsville, had written a former will for his uncle, devising to his nineteen nieces and nephews about $1,000 each. His uncle had sold the old "home place" which was near his Cane Valley home. He had sold this property at a price considered too little by several of his kin, including appellant Branch Sublett. Branch Sublett told Rice that if he "had been there he would not have let him sell it."

Appellant Loneta Sublett, daughter of appellant Branch Sublett, taken as if under cross-examination, says that after the decedent came to their home on June 12, 1945, he paid board of $10 the first week, and after that $15 per week. On September 11, 1945, he gave her father a check for $5,000 on the Lebanon bank. She filled out this check. She did most of his writing. Asked what the $5,000 was for, she said, "For past services rendered, and possible future." She says the decedent told her "I want a place to stay to call home." Asked if he bought an interest in her father's home, she answered, "He did not." She knows how to write deeds. In January, 1946, she typed a deed for decedent's Cane Valley home to her father. The deed showed a consideration of $500 cash in hand paid. Decedent told her to put it in that way. She says her father gave the decedent a check for $900 in payment for this place. About the same time, she drafted a will for decedent which differed little in its provisions from a former will executed by decedent, except that a devise in the former will of the Cane Valley property to Eloise Sherman was changed to a bequest of $500 in the last will, and Branch Sublett was named as sole executor. In the former will, he had been named as co-executor with another nephew, Tennie B. Rice. This last will prepared by Miss Sublett was dated January 23, 1946.

Miss Norene Cofer, a Notary Public of Cane Valley, was asked by Branch Sublett to go with him and Davis Jones to his home. .Branch asked his daughter to go and bring the papers—a will and deed—into the room. Miss Cofer read the will to John Green Sublett. He "didn't say a word about the will, did not seem to know it was a will. I read it and he sat there and didn't say a word." .On that visit Miss Cofer took decedent's acknowledgment to the deed, and she and Davis Jones witnessed the will.

The deed was not recorded until after the death of John Green Sublett. The $900 check was not cashed but was found by appellants, they say, after decedent's death.

Branch Sublett, taken as if under cross-examination, says that decedent told him that he was to have his personal belongings, including his watch and diamond ring. There .was no provision in his will as to these things. He admits hearing decedent say that he was giving the Cane Valley property to his niece, Eloise Sherman. Asked if decedent made him a gift of $5,000 before he died, he answered, "In a way it was a gift. I called it a deal." Asked what he gave him in return for the $5,000, he said, "I gave him services past, and services present, and possible future." He says the old gentleman told him "I'm getting older every day and I want a place to be home. I tell you I am going to give you $5,000 and square off with you and I want to live on with you." Branch says that after studying about it he accepted the $5,000. He does not deny telling his cousin B. N. Sublett, in August, 1945, that their uncle was rapidly getting worse and that he was then unable to attend to any business.

John Green Sublett called his nephews .and nieces his "children;" told them he wanted them to have his property in equal shares, except the Cane Valley property; told them he couldn't sell the Cane Valley property because he had given it to Eloise. It appears that the other relatives, including those with whom the old gentleman had been staying, did not know about the gift of $5,000 to Branch, or the deed to him for the Cane Valley property, or the uncashed check for $900, or the new will changing the gift of the Cane Valley property,

worth around $2,000, to a bequest of $500 to Eloise Sherman until after decedent's death.

Harold Rogers, of Cane Valley, wishing to buy the Cane Valley property, went to see decedent at Branch's home in January, 1946. Branch's wife told Rogers "they didn't let anyone see Mr. John Green." Branch came in and Rogers told him why he wished to see decedent; Branch told him that "he took care of all * * * Mr. John Green's business." Branch asked him not to tell decedent why he had come. Branch told John Green that Rogers was there "looking at a mule or cow." Rogers says on that visit Branch priced the Cane Valley property to him at $2,000. This testimony is not denied.

In Walls v. Walls, 30 Ky. Law Rep. 949, 99 S. W. 969, 970, we said: "Direct proof of undue influence can seldom be had. Like fraud, it must be proved ordinarily by circumstances, and, though each circumstance standing alone might be quite inconclusive, yet the effect of all the circumstances when taken together may be more convincing."

Among the circumstances that may be considered are mental incapacity, confidential relations, active participation by the beneficiary or his agent in the preparation of the deed or other instrument, the exclusion of near relatives, the result accomplished, false statements and recitals as to consideration in the conveyance, inadequacy of consideration under such circumstances, and concealment of or failure to record the conveyance.

In McCarty et al. v. Conley, et al., 289 Ky. 61, 157 S. W. 2d 475, 480, we said: "It has often been held by this court that where a grantor is old and physically infirm and is in the custody of the grantee, the burden is on the latter to show that a questioned conveyance was freely and voluntarily made with the full understanding of its consequences and nature."

Decedent was worth about $20,000. He owned a home at Cane Valley. He was well able to employ some one to take care of him. It appears that his nieces and nephews were all willing for him to spend time with them. He always paid each of them a reasonable amount each week when he stayed with them. He was able to be at Branch Sublett's for not more than $60 per month at the time Branch received the $5,000 check

written by Branch's daughter. The evidence shows that decedent had always been thrifty and saving, and had for some time entertained a fear that some one might get part of his money out of the bank. It appears that Eloise Sherman was a favorite of decedent, and that he had a fixed purpose of giving her his Cane Valley property. The deed to Branch Sublett for the Cane Valley property was not recorded during decedent's lifetime, and while the consideration shown in the deed was only $500, the property was worth around $2,000. Strangely enough, it is said for appellants that a check for $900 was given decedent, a check which was never cashed by him.

The Chancellor found that appellants "occupied a confidential relationship to the decedent, John Green Sublett, while he was aged and infirm in mind and body, and that" they "failed to sustain the burden of showing that the gifts and transfers made by the decedent" to appellant were freely and voluntarily made with the full understanding of their consequences and nature. Under all the facts and circumstances of this case we believe the Chancellor reached the correct conclusion.

The judgment is affirmed.