**Jean ACTON, Appellant,**

v.

**J.D. ACTON and Lowell Acton, Appellees.**

No. 2007–CA–000239–MR.

Court of Appeals of Kentucky.

July 3, 2008.

Rehearing Denied Sept. 15, 2008.

Discretionary Review Denied by Supreme Court June 17, 2009.

Jean Acton, Louisville, KY, pro se.

D. Bruce Orwin, Somerset, KY, for appellee.

Before ACREE and STUMBO, Judges; GRAVES,[1] Senior Judge.

## OPINION

ACREE, Judge.

Jean Acton appeals, *pro se,* from an order of the Pulaski Circuit Court order-

---

1. Senior Judge John W. Graves sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.

ing the sale of a farm owned in equal shares by Jean and her two brothers, Lowell and J.D. Acton. The trial court concluded that the property was indivisible and ordered the Master Commissioner to sell it and divide the net proceeds evenly among the parties. After a careful examination of the record and the issues raised in the parties' briefs, we affirm in part, reverse and remand in part.

Luther Acton died intestate in 1955, survived by his wife, Ethel, and their three children. The property passed to the parties in shares of two-ninths each, with Ethel retaining a dower interest in one-third. Seven years later, Lowell was facing a civil suit. He decided to convey his interest in the property to Ethel in order to protect the farm from a possible judgment against him. Although the deed recited consideration of $1,000.00, Lowell denies that he received any benefit in exchange for deeding his share to his mother.

In 1994, Lowell's son took his grandmother to an attorney's office where Ethel executed a deed reconveying Lowell the property he had previously conveyed to her. The deed from Ethel to Lowell reserved a life estate in the property to Ethel. There is some controversy about the location of the deed for the next few years. Nevertheless, it is uncontroverted that Lowell did not record the deed until February 2002, more than a year after his mother died.

A few days after the deed was finally recorded, Lowell and J.D. filed an action in the circuit court, pursuant to KRS 389A.030, to compel the sale of the farm and the equal division of the proceeds. The complaint averred that Lowell, J.D., and Jean each owned a one-third interest in the farm. Jean filed a response and counterclaim denying that she and her siblings each owned one-third of the farm. She specifically alleged that her brother, J.D., was Ethel's illegitimate child and,

thus, not an heir at law of her father who had been dead for almost fifty years. After DNA testing revealed this claim to be false, she withdrew the portion of her complaint seeking to dismiss J.D. as a plaintiff. She continued, however, to contest the validity of the 1994 deed from Ethel to Lowell and to pursue a counterclaim against Lowell for his use of the entire farm and for cutting timber. Jean also sought partition of the farm, rather than a sale with division of proceeds.

On July 7, 2005, the circuit court entered its first order and judgment. The order contained findings that the deed between Ethel as grantor and Lowell as grantee was delivered and, thus, he reacquired his earlier interest in the farm. Although the trial court found there was no genuine issue of material fact as to the siblings' one-third interests in the farm, the issue of partition versus sale of the property was reserved. This judgment did not contain finality language pursuant to Kentucky Rules of Civil Procedure (CR) 54.02. Jean then filed a motion requesting findings of fact on the issue of whether Lowell and his son exerted undue influence on Ethel to execute the 1994 deed and also asking the trial court to make its prior judgment final and appealable.

The circuit court's next order, styled partial judgment and dated August 17, 2005, reiterated the findings of the prior judgment and made an additional finding that there was no undue influence when Ethel signed the 1994 deed. This judgment did recite that it was final and appealable, however, it lacked a determination that there was no just reason for delay. Consequently, we dismissed Jean's appeal from this order. 2005–CA–001795–MR.

Jean subsequently filed a motion to set aside the circuit court's prior orders and sought the trial judge's recusal. Although

the motions to set aside the previous judgments were denied, the trial judge did recuse and noted that his successor might reconsider Jean's motion. On August 8, 2006, with a new judge presiding, the circuit court entered a judgment denying the motion to set aside the prior orders and making findings of fact which were in substance the same as those contained in the July and August 2005 orders. In addition, Jean's motion to sell some of the farm's timber was denied, as well as a motion to assign seven cemetery lots which had been owned by Ethel. The circuit court reserved judgment on Jean's counterclaim against Lowell and set a schedule for the parties to furnish proof prior to final adjudication.

The final judgment appealed from herein was entered December 18, 2006. In this order, the circuit court considered the testimony of expert witnesses for both sides and made a finding that the farm could not be fairly divided between the parties. Thus, the farm was ordered to be sold and the proceeds divided with each sibling to receive one-third. In addition, Lowell was found to owe Jean money for tobacco payments in 1999, 2000, and 2001. There was insufficient proof to establish how much money, if any, was owed from 2002 to the present. Finally, the trial court noted that it had previously ordered Jean to be added to the distribution list for all orders after her attorneys ceased to represent her. A subsequent motion to alter, amend, or vacate was granted in part with the circuit court finally dismissing Jean's counterclaim against Lowell and awarding costs and attorney's fees to the plaintiffs. This appeal followed.

Although she was represented by counsel during at least part of the proceedings in the court below, Jean, who is a licensed attorney, represents herself on appeal. She raises numerous issues on appeal, only a few of which merit any consideration in depth. We will first address the circuit court's finding that Lowell, J.D., and Jean each own one-third of the property. Jean contends that the evidence below demonstrated that Lowell and his son exercised undue influence over Ethel in procuring her signature on the 1994 deed and also that the deed was never delivered to Lowell. As previously mentioned, the evidence surrounding the signing and delivery of the 1994 deed is contradictory. On the one hand, Lowell testified that he received the deed shortly after Ethel signed it, but delayed recording it until after her death because he did not want to embroil the property in his divorce action. On the other hand, Jean introduced evidence that Ethel kept the deed among her papers until it was stolen from her home while she was hospitalized in 1998. Jean also testified that Ethel did not want to sign the deed and was unhappy that she had been forced to convey the property back to Lowell. Lowell's son, who took Ethel to the attorney's office where the deed was prepared, denied that there was any coercion.

The circuit court declined to find that Ethel's deed reconveying the property to Lowell was the product of undue influence. It is well-established that undue influence "must be of sufficient force to destroy the free agency of the grantor and to constrain him to do, against his will, that which he would otherwise have refused to do[.] [P]roof of undue influence must amount to more than a bare showing that the opportunity for its imposition existed." *Riddell v. Pace*, 271 S.W.2d 31, 33–4 (Ky.1954). "The power reposed in courts to set aside [a deed] is an extraordinary one and is not to be lightly exercised." *Price v. Pike*, 458 S.W.2d 440, 442 (Ky.1970). It requires "proof of considerable strength to annul the conveyance on [the] ground [of undue influence]." *Lane*

*v. Taylor*, 287 Ky. 116, 152 S.W.2d 271, 275 (1941).

The circuit court noted the conflicting evidence offered by the parties and specifically found that many of Jean's allegations were rebutted by the testimony of Lowell's son. While the court found "some slight evidence of opportunity" to influence Ethel, it opined that the high burden of proof necessary to successfully challenge a property transfer was not met.

■ Jean maintains that the circuit court improperly placed the burden of proof on her to prove the existence of undue influence. She contends that Lowell and his son had a duty to prove the absence of undue influence under *Hightower v. Hightower*, 346 S.W.2d 748 (Ky. 1961). The shifting of the burden of proof in *Hightower* was the result of the trial court's finding that a confidential relationship existed between the aged grantor and the cousin to whom he deeded his property. No such finding was made in this case. Nevertheless, Jean argues that her mother was "old and physically infirm and . . . in the custody of the grantee" prior to her death and, thus, Lowell was required to prove that she signed the 1994 deed voluntarily. *Sublett v. Sublett*, 312 Ky. 23, 226 S.W.2d 324, 327 (1950).

■ This issue of which party should bear the burden of proof in a case in which undue influence has been claimed has already been carefully analyzed.

The burden referred to by the appellant is said to be that of going forward with the evidence. *Kitts v. Kitts*, Ky., 315 S.W.2d 617; *Nagle v. Wakefield's Adm'r*, Ky., 263 S.W.2d 127; see also *Been v. Jolly*, Mo., 247 S.W.2d 840. We think this may be equated with the burden on the defendant in a res ipsa loquitur case. The rationale is that the circumstances of the transaction or event constitute circumstantial evidence which, if the defendant does not go forward with the evidence, will *authorize* a finding for the plaintiff, or if strong enough, may *require* a finding for the plaintiff. *Lee v. Tucker*, Ky., 365 S.W.2d 849; *Bell & Koch, Inc. v. Stanley*, Ky., 375 S.W.2d 696. If the circumstantial evidence is strong enough only to *authorize* a finding for the plaintiff, the fact that the defendant does not go forward with the evidence, or produces only weak evidence, will not prevent a finding for him. (The purpose of a defendant's going forward with the evidence in such a case is either to increase his chances of a favorable finding, or to endeavor to produce evidence so completely overcoming the force of the circumstantial evidence as to *require* a finding for him.) On the other hand, if the circumstantial evidence is strong enough, unrebutted, to *require* a finding for the plaintiff, the defendant in order to *authorize* a finding in his favor must produce evidence weakening the force of the circumstantial evidence sufficiently to create an issue of fact, and in order to *require* a finding in his favor must produce evidence completely overcoming the force of the circumstantial evidence. *Lee v. Tucker*, Ky., 365 S.W.2d 849; *Bell & Koch, Inc. v. Stanley*, Ky., 375 S.W.2d 696.

In the instant case it is unnecessary for us to decide whether the circumstances surrounding the execution of the deed, if unexplained, would have required a finding for the plaintiffs, because in our opinion the evidence produced by the defendant in any event weakened the force of the circumstantial evidence sufficiently to create an issue of fact.

*Mix v. Smith*, 387 S.W.2d 1, 2–3 (Ky.1965). Similarly, in the case at hand, the evidence was not so overwhelming as to require a finding of undue influence. A trial court's findings of fact regarding the existence of undue influence shall not be set aside by

an appellate court unless they are clearly erroneous. *Mason v. Randolph,* 304 S.W.2d 913, 915 (Ky.1957). Jean has failed to show that the circuit court's refusal to find undue influence was clearly erroneous.

Jean also attacked the validity of the 1994 deed by arguing that it was never delivered to Lowell. A signed and delivered deed is good between the parties, even if it is not recorded. *Statewide Development Co. v. Lexington Fayette Urban County Government,* 821 S.W.2d 97, 100 (Ky.App.1991). Further, possession of a deed by a grantee creates a strong presumption of delivery which must be rebutted by clear and convincing evidence that the grantor did not intend to pass title. *McHargue v. McHargue,* 269 Ky. 355, 107 S.W.2d 278, 280 (1937). As occurred in the case at hand, a grantor's reservation of a life estate is evidence of her intent to pass title to the grantee immediately. *Rodgers v. Hendrickson,* 293 S.W.2d 456, 458 (Ky. 1956).

Thus, Jean needed to establish by clear and convincing evidence that her mother did not intend to pass title to Lowell when she executed the 1994 deed. The testimony regarding the deed's delivery was conflicting. Jean points out that Lowell gave differing accounts of how he came to possess the deed. Nevertheless, he consistently stated that he had the deed since shortly after Ethel signed it, but delayed recording it because he was going through a contentious divorce. Both Lowell and his son stated that Ethel intended Lowell to have the property. Jean, on the other hand, insisted that she had seen the deed among her mother's papers on different occasions throughout the years 1994–1998 and that Lowell stole it while Ethel was hospitalized in 1998. She contended that Ethel regretted signing the deed and had no intention of delivering it to Lowell.

"Unless it can be demonstrated that the judgment below is clearly erroneous or manifestly against the weight of the evidence, the [appellate] court will not disturb the findings of the trial judge." *Harry Harris, Inc. v. Quality Const. Co. of Benton, Ky., Inc.,* 593 S.W.2d 872, 874 (Ky.App.1979). CR 52.01 specifically states that "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." In this case, the circuit court, after hearing the parties conflicting accounts, concluded that Lowell validly came into possession of the 1994 deed. This Court is not permitted to substitute its own evaluation of the evidence for that of the trier of fact. Because we have upheld the circuit courts findings regarding lack of undue influence and the validity of the 1994 deed, we must also affirm the finding of fact that Lowell, J.D., and Jean each had a one-third interest in the farm.

Next, Jean claims the circuit court incorrectly found that the property was indivisible. The circuit court ordered the land sold pursuant to KRS 389A.030(1), which reads as follows:

When two (2) or more persons other than tenants by the entirety in residential property actually occupied by them as a principal residence share title to real estate in such manner that a conveyance by them jointly would pass a fee simple title, any one (1) or more of them may bring an action for the sale or division thereof in the Circuit Court of the county in which the land, or the greater part thereof, lies, making parties defendant those owners who have not joined as plaintiffs. A fiduciary possessing a power of sale may institute such an action against owners of interests not represented by him. Defendant owners shall be brought before the court in the manner provided by the civil rules whether or not a fiduciary possesses a power of sale of the defendant's interest, but any fiduciary possessing such a pow-

er shall also be made a defendant. The case shall be tried without a jury.

Subsection (3) creates a presumption of indivisibility, unless a party to the action raises the issue in a pleading. Then, the statute allows a court to divide property if it is "satisfied from the evidence that the property is divisible, without materially impairing the value of any interest therein." The burden of going forward with evidence to rebut the presumption was on Jean. *Roberts v. Roberts,* 67 S.W.3d 605, 607 (Ky.App.2001). However, once Jean introduced some evidence that the farm could be partitioned, Lowell and J.D. bore the burden of proving that partition would materially impair the property's value. *Woods v. Woods,* 418 S.W.2d 757 (Ky. 1967).

▪ Lowell and J.D. introduced the deposition of Ron Smith, an appraiser with over thirty years' experience evaluating property. Jean filed a motion asking the circuit court to strike Smith's deposition because she did not receive reasonable notice of when it was to occur. The circuit court denied the motion, finding that Jean received six days' notice of the scheduling of Smith's deposition. This finding is obviously in error.

Counsel for the plaintiffs mailed Jean and her then-attorney a notice that Smith's deposition would be taken in Somerset on Tuesday, September 5, 2006, at 11:00 a.m. Both Jean and her attorney had addresses in Louisville. The notice to take Smith's deposition was filed with the circuit court on Wednesday, August 30, 2006, and states in the certificate of service that it was sent to Jean and her attorney via U.S. mail on that same day.

In order for Jean to have had six days' notice, she would have to have received the notice the day after it was mailed. She asserts that, throughout the proceedings below, she informed counsel for the plaintiffs both verbally and in writing that mail from Somerset to Louisville took four to five days to arrive. The fourth day after the notice was mailed was a Sunday, and the following Monday was Labor Day, a federal holiday with no mail delivery. Thus, Jean very credibly asserted that she and her attorney received the notice the morning of the deposition and, even if they had been in a position to leave immediately for Somerset, they could not have arrived by the time it was scheduled to begin.

When she received the notice, Jean both called and faxed the plaintiffs' counsel to request that the deposition be rescheduled to a mutually convenient date. Counsel for the plaintiffs attempted unsuccessfully to send a fax to Jean, requesting that Smith's deposition be conducted by telephone or, in the alternative, that she sign an agreed order to extend the deadline for taking of proof so that it could be rescheduled. Despite counsel's inability to contact Jean, Smith's deposition proceeded with his testimony being taken in a nonadversarial setting. An attempt to compensate for Jean's inability to be present was made by securing Smith's agreement that he would make himself available for cross-examination. Based on the subsequent events, it strains credibility to believe that this offer was sincerely intended.

Jean attempted to review Smith's deposition on September 15th only to find that no transcript had been filed with the court. Her own expert was deposed on September 22nd and Jean's deposition was taken on the 25th. Neither of them had the benefit of reviewing Smith's testimony because his deposition still had not been made available. A transcript of Smith's deposition was finally filed on October 9, 2006, just two days before the deadline set by the circuit court for all proof to be taken. Thus, Jean had no opportunity to cross-examine Smith, or to rebut his testimony with that of her own expert. Per-

haps the most egregious allegation of all made by Jean is that plaintiffs' counsel neglected to mention the scheduled deposition when both of them appeared in court on September 1, 2006, the day after the notice was mailed.

"A party desiring to take the deposition of any person upon oral examination shall give reasonable notice in writing to every other party to the action[.]" CR 30.02(1). Our courts have already determined that a three-day notice is not reasonable, especially when travel is required. *Adams v. Letcher County*, 299 Ky. 171, 184 S.W.2d 801, 803 (1944). In *Armstrong v. Biggs*, 275 S.W.2d 60 (Ky.1955), a trial court found that a four-day period, including a Sunday, between the date of service of notice and the date of the noticed deposition did not work a hardship on the opposing parties who were to be deposed. This finding was likewise overturned on appeal.

> "Reasonable notice" for the appearance of the party imports reasonable opportunity to conform. It means in this relation such length of time as may fairly, properly and reasonably be allowed or required, regard being had for all the attending circumstances. These, of course, comprehend distance of travel and the customary means thereof, time for preparation and due regard for the convenience and prior engagements of counsel and witnesses. In interpreting the rule it is generally said that unless there are special circumstances, at least five days notice should be given[.]

*Armstrong*, 275 S.W.2d at 62. Lowell and J.D. maintain that Jean received five days' notice of the deposition. Considering the intervening Sunday and federal holiday, we find their claim unpersuasive. ("[I]n construing the time allowed for preparation and travel between the notice and the taking of the depositions, an intervening Sunday must be excluded[.]" *Adams*, 184 S.W.2d at 803.)

Since the circuit court erroneously found that Jean had received sufficient notice of Smith's deposition, it also erred in denying her motion to strike that deposition. *Adams*, 184 S.W.2d at 803. With the exception of this deposition, erroneously admitted, all of the evidence supported partition. Jean's appraiser, James Graybeal, testified that the property could be divided into three equal tracts. Further, Jean points out that, in his deposition, Lowell stated the farm could be divided and that his preferred section was the portion where the farmhouse, barn, and sheds were located. Jean also testified that the farm was capable of being divided and, in addition, agreed that Lowell could have the portion for which he stated a preference and J.D. the adjoining portion. When only the admissible evidence is considered, the circuit court's finding that Lowell and J.D. met their burden of proving that the farm could not be divided without materially impairing its value is clearly erroneous.

Jean also appeals from the circuit court's order allowing costs and reasonable fees for the plaintiffs' attorney to be paid from the proceeds of the sale. As this Court has already determined that the circuit court erroneously ordered the property to be sold, rather than partitioned, we must also reverse the order awarding costs and fees. Further, we note that the circuit court incorrectly applied the holding in *Bettes v. Rogers*, 281 Ky. 118, 135 S.W.2d 74 (1939). In its order, the court below cited *Bettes* for the proposition that awarding costs and fees is within the discretion of the trial court. The holding in *Bettes* actually reversed a lower court's decision to award costs and fees, finding that such an award was not authorized where a partition proceeding was contested. ("[W]e are of [the] opinion it would be an abuse of judicial discretion to compel a party to an action for partition, who opposes partition,

and has counsel representing him, to be compelled to contribute to pay fees of opposing counsel." *Bettes,* 135 S.W.2d at 78. Citation omitted.) Similarly in the case at hand, where Jean retained counsel to advocate against a sale and distribution of proceeds and actively sought partition of the property, the circuit court's order would have required her to contribute toward the counsel of her legal adversaries. This decision was an abuse of the circuit court's discretion.

Jean raises numerous additional issues in her brief which we have considered and deem unnecessary to address in detail. The circuit court correctly refused to divide cemetery lots which had been owned by Ethel since they were unrelated to the proceeding below. Jean appeals from a ban on distribution of the circuit court's orders to her personally. No such ban exists. The circuit court's earlier refusal to order timber harvested is moot at this point. Although Jean contends that it was unnecessary for the circuit court to conduct a trial on the partition order, she fails to identify where this issue was preserved for appellate review. Similarly, no law is cited in support of her contention that J.D. should have been dismissed as a plaintiff in the action below because he failed to appear or give a deposition. We also find no error in the circuit court's failure to order tobacco proceeds to be paid into the court while this action was pending, refusal to order Lowell to reimburse Jean for the costs of the DNA tests which established that J.D. was Luther Acton's son, and denial of Jean's motion for attorney's fees for Lowell's cancelled deposition. Finally, the circuit court's order dismissing Jean's counterclaim against Lowell due to lack of evidence introduced by Jean is also affirmed.

For the foregoing reasons, the judgment of the Pulaski Circuit Court is affirmed in part and reversed and remanded in part.

The circuit court's order awarding costs and fees to the plaintiff is reversed. Further, the circuit court's finding that the property in question is indivisible is reversed. The circuit court's finding that Lowell, J.D., and Jean each have a one-third interest in the property is affirmed, as are all other portions of the circuit court's orders appealed from herein. This case is remanded to the circuit court with directions to divide the property between the parties in accordance with the statutory procedure outlined in KRS 381.135, and for any other necessary proceedings consistent with this opinion.

ALL CONCUR.