Terry **MAYS** and Brenda **Mays,** Appellants

v.

Liddia **PORTER,** Appellee.

No. 2011–CA–000362–MR.

Court of Appeals of Kentucky.

April 19, 2013.

Sharon Rowsey, Ashland, KY, for appellant.

R. Stephen McGinnis, Greenup, KY, for appellee.

Before ACREE, Chief Judge; MOORE and THOMPSON, Judges.

## OPINION

MOORE, Judge:

Terry and Brenda Mays appeal the judgment of the Boyd Circuit Court finding that the real property transfer to them was the result of undue influence. After a thorough review of the record, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Brenda Mays is the daughter of Charles and Liddia Porter. Brenda and her husband, Terry, brought this action in Boyd Circuit Court seeking to recover items of personal property that Terry had allegedly stored in the Porter garage. Terry asserted that, upon Liddia's request, he and Brenda moved in with Liddia after Charles' death. Consequently, Terry moved numerous items into the Porter garage. When Liddia later demanded that the Mayses move out of her home, the

Mayses were denied access to the garage and could not retrieve their property.

Liddia filed a counter-claim, seeking to set aside the deed to her home that she and Charles had executed in favor of the Mayses. Specifically, Liddia's counter-claim alleged that she "was coerced into signing the Deed through undue influence and means of fraud perpetrated by the [Mayses]."

A bench trial was held. Numerous parties testified regarding how the Mayses had attempted to influence Charles and Liddia to deed the house to them by convincing them that none of the Porters' other children were appropriate caregivers for the couple and promising that they would provide care for the Porters.

A large portion of the testimony presented was in regard to Charles' poor health and mental condition at the time the deed was executed, as well as Liddia's history of complying with Charles' business decisions despite any personal misgivings she may have had regarding those decisions. Specifically, Liddia also testified that Charles had arranged the preparation of the parties' wills and that she had no control over the provisions contained in her will, which devised her entire estate to Brenda, leaving only "love" to her remaining children. Several witnesses testified that prior to Charles and Liddia conveying the subject property to the Mayses, Charles decided to sell a parcel of property for significantly lower than market price. However, after Liddia expressed reluctance to sign the deed, she nevertheless complied after Charles instructed her to do so.

The Mayses' counsel made a general objection to the relevance of the testimony regarding the prior deed after which Liddia's counsel argued that the testimony was relevant to the argument that Charles had a confidential relationship with Liddia

and had unduly influenced her to execute the deed to the Mayses. Therefore, counsel contended that any prior evidence of Charles exerting this type of power over Liddia was relevant. The circuit court permitted the testimony; no objection was made regarding the fact that Liddia's counterclaim did not contain an allegation of Charles having unduly influenced Liddia to execute the subject deed.

Further, the attorney who drafted the deed at issue testified that Liddia had attempted to express some concerns and questions regarding the deed but that Charles did not permit her to ask any questions and "pretty much took control of the situation." Liddia also testified that before she executed the deed, she told Charles "I'm not gonna sign that deed. And [Charles] said 'yes, you are.' So I did." Liddia expressed concerns for her safety because Charles had become increasingly belligerent in the last few years of his life, and she recounted one event where he had become violent with her. Liddia explained that she signed the deed "just to save an argument."

Liddia confessed that she did not express her reservations to anyone else. She also indicated that she was forced to sign a document reaffirming their deed to the Mayses and that she signed the document without reading it. Moreover, Liddia testified unequivocally that she would not have executed the deed if Charles had not required her to do so. Again, no objection was made with respect to the fact that the issue of Charles' undue influence had not been pled.

In fact, upon the Mayses' motion at the close of Liddia's case in chief, Liddia's counsel contended that the proof was sufficient to demonstrate that Liddia was unduly influenced "not only by [Charles] but also by the Mayses as well." The Mayses'

counsel, again making no objection on the basis that the allegation that Charles had unduly influenced Liddia had not been pled, responded to the merits of Liddia's argument noting that the party alleged to have exerted undue influence, *i.e.*, Charles, was not present to say what he did or did not do and further argued that Charles' conduct did not rise to the level of undue influence because such conduct was merely the nature of the Porters' relationship.

The circuit court also heard testimony regarding the personal property in the garage. Liddia contended that the list of items provided by Terry had belonged to Charles. Although Terry testified that the tools on the list were his, he could not provide any documentation to support his contention. Liddia's grandson, Jonathan Porter, testified that he recalled Charles having used all of the tools that were stored in the Porter garage, with the exception of a weed eater and air compressor which he believed belonged to Terry.

The Mayses filed a post-trial brief in which they argued that the evidence introduced to prove that the deed was a result of Charles' undue influence upon Liddia should not be considered, as this was not pled as part of Liddia's counterclaim.

Liddia subsequently requested that the circuit court permit amendment of her counterclaim pursuant to CR [1] 15.02 to include undue influence by Charles as a basis for invalidating the deed. The circuit court permitted Liddia to amend her counterclaim and ultimately found that the deed was a result of Liddia having been unduly influenced by Charles. Accordingly, the circuit court ordered that the conveyance from the Porters to the Mayses be set aside. The circuit court also accepted Jonathan's testimony regarding Terry's claim to the personal property and ordered

that only the air compressor and weed eater be returned to the Mayses. The Mayses now appeal.

## II. ANALYSIS

■ The Mayses first argue that the court abused its discretion by permitting Liddia to amend her counterclaim post-trial. The Mayses contend that permitting the amendment was untimely and amounted to a "verdict by ambush." They further assert that they were prejudiced because they did not have the opportunity to present rebuttal testimony. We review the issue of whether a circuit court erred in permitting the pleadings to be amended for an abuse of discretion. *Nucor Corp. v. General Elec. Co.*, 812 S.W.2d 136, 145 (Ky.1991).

Pursuant to CR 15.02, amendment of the pleadings "may be made upon motion of any party at any time, even after judgment[.]" Thus, the Mayses argument that the post-judgment amendment was untimely fails.

■ Furthermore, "[a] party's failure to object to the introduction of evidence on an unpleaded issue implies consent to the trial of the issue." *Kroger Co. v. Jones*, 125 S.W.3d 241, 246 (Ky.2004) (citing *Nucor*, 812 S.W.2d at 145–46). The Mayses contend that they properly objected to this testimony when objecting generally to the relevancy of the testimony regarding the previous property transfer made by the Porters and the testimony regarding the preparation of Liddia's will. However, any objection regarding issues presented but not raised in the pleadings must be "objected to *at the trial on the ground* that it is not within the issues made by the pleadings[.]" CR 15.02 (emphasis added). As mentioned previously, the Mayses made no specific objection that the issue had not

1. Kentucky Rule of Civil Procedure.

been raised in the pleadings and specifically did not object to opposing counsel's argument that the evidence was relevant on that basis. *See* CR 15.02 (requiring that an objection be made "on the ground that it is not within the issues made by the pleadings").

The Mayses did make a specific objection in their post-trial brief. However, CR 15.02 requires that the objection be made at the trial. Because the Mayses failed to make an appropriate objection, the issue was implicitly tried pursuant to CR 15.02. Accordingly, we conclude that the circuit court did not abuse its discretion when permitting post-trial amendment.

The Mayses' remaining assignments of error pertain to the sufficiency of the evidence presented at trial to support the circuit court's conclusions that 1) Terry had no claim to the remaining personalty in Liddia's garage, and 2) that Charles unduly influenced Liddia such that the execution of the deed was not the result of her own free will.[2]

■ Where the sufficiency of the evidence is challenged on appeal, we are permitted to reverse only where the lower court's findings of fact were clearly erroneous. CR 52.01. Findings of fact are clearly erroneous only if they are not supported by substantial evidence. *Black Motor Company v. Greene*, 385 S.W.2d 954, 956 (Ky.1964). The test for substantiality of evidence is whether the evidence, when taken alone, or in the light of all the evidence, has sufficient probative value to induce conviction in the minds of reasonable persons. *Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky.1972); *Janakakis–Kostun v. Janakak-*

*is,* 6 S.W.3d 843, 852 (Ky.App.1999). We likewise give due regard to the opportunity of the circuit judge to consider the credibility of the witnesses. CR 52.01; *Lawson v. Loid,* 896 S.W.2d 1, 3 (Ky.1995).

■ With respect to the remaining personalty in the garage, Jonathan Porter's testimony was that all the tools remaining in the garage had been used by his grandfather, with the exception of the air compressor and weed eater. Thus, the circuit court's finding was supported by the evidence of record. And, although Terry's testimony was to the contrary, the circuit court clearly found Jonathan's testimony to be more credible. Accordingly, we cannot disturb its finding.

■ The circuit court's conclusion that the deed was a result of undue influence by Charles is likewise supported by substantial evidence.

It is well-established that undue influence must be of sufficient force to destroy the free agency of the grantor and to constrain him to do, against his will, that which he would otherwise have refused to do. Proof of undue influence must amount to more than a bare showing that the opportunity for its imposition existed. The power reposed in courts to set aside a deed is an extraordinary one and is not to be lightly exercised. It requires proof of considerable strength to annul the conveyance on the ground of undue influence.

*Acton v. Acton,* 283 S.W.3d 744, 747 (Ky. App.2008) (internal citations and quotations omitted). Furthermore, a case involving undue influence is dependent upon its "own peculiar facts, and one case will

---

**2.** Liddia correctly notes that the Mayses did not comply with CR 76.12(4)(c)(v) requiring that a party's brief "contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." While this omission may serve as a basis for striking those portions of the brief, given our disposition, we will nevertheless address the merits. CR 76.12(8)(a).

rarely serve as a precedent for another." *Laun v. De Pasqualte,* 254 Ky. 314, 71 S.W.2d 641, 644 (1934).

The Mayses point to evidence that would support their contention that the deed was not obtained through undue influence. However, the evidence of record also supports that Liddia did not wish to execute the deed and that she would not have done so absent Charles' insistence. The attorney that prepared the deed indicated that Liddia attempted to ask questions regarding the deed, but that Charles did not permit her to do so prior to executing the deed. Additionally, there was evidence to show that Charles had previously exerted physical force over Liddia and that she refrained from going against Charles' wishes because she feared for her safety. It was within the province of the circuit court to assess the credibility and to assign the appropriate weight to this testimony. *Moore v. Asente,* 110 S.W.3d 336, 354 (Ky.2003)("[J]udging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the [circuit] court."). The circuit court concluded that Charles' influence was of such a degree that Liddia did not act voluntarily or with free agency when executing the deed. Again, despite the existence of evidence to the contrary, we cannot reverse the circuit court's determination where there was substantial evidence of record to support its findings.

Accordingly, we affirm.

ALL CONCUR.